Document Electronically Filed

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPY PHONE LABS LLC, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 2:14-cv-06565- |
| | ) MCA-MF |
| v. | ) |
| | ) ECF Case |
| GOOGLE INC. and ANDREI CIUCA, | ) |
| d/b/a CAD COMPLAINT | ) **Motion Return Date:  April 6, 2015** |
| DESIGN, and JOHN DOES 1-49, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GOOGLE INC.'S MOTION TO TRANSFER VENUE OR DISMISS THE AMENDED COMPLAINT

HERRICK, FEINSTEIN LLP
210 Carnegie Center
Princeton, New Jersey 08540
Tel: (609) 452-3800
Fax: (609) 452-3816

*Attorneys for Defendant Google Inc.*

On the Brief:

Barry Werbin, Esq. (admitted *pro hac vice*)
bwerbin@herrick.com
Patricia M. Graham, Esq.
pgraham@herrick.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES....................................................................................ii

POINT I     THE DDA'S FORUM SELECTION CLAUSE REQUIRES
            TRANSFER............................................................................. 1

POINT II    THE AMENDED COMPLAINT FAILS TO STATE A
            PLAUSIBLE CLAIM FOR CONTRIBUTORY
            INFRINGEMENT .................................................................. 4

POINT III   THE TORTIOUS INTERFERENCE CLAIM SHOULD BE
            DISMISSED ....................................................................... 10

     A.     Section 230 of the CDA Requires Dismissal of the Claim ................ 10

     B.     Plaintiff has Failed to State a Tortious Interference Claim ................ 13

CONCLUSION ....................................................................................... 15

HF 9941054v.2

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 4,12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 5

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557
(D.N.J. 2002) .................................................................................................. 14

*Cape Flattery, Ltd. v. Titan Maritime, LLC,* 647 F.3d 914 (9th Cir. 2011) .............. 4

*Crescent Int'l, Inc. v. Avatar Cmties, Inc.*, 857 F.2d 943 (3d Cir. 1988) .................. 3

*Delfino v. Agilent Technologies, Inc.,* 145 Cal. App. 4th 790 (2006) ...................... 13

*Dobenko v. Google Inc.*, 991 F. Supp. 2d 1219 (S.D.Fla. 2013) ............................. 11

*Driftwood Hospitality Mgmt., LLC v. Centimark Corp.*, 2014 WL 4825274
(S.D. Fla. 2014) ............................................................................................. 3,4

*Gray v. BMW of North America, LLC*, 2014 WL 4723161
(D.N.J. Sep. 23, 2014) ...................................................................................... 5

*John Wyeth & Bros., Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070 (3d Cir. 1997) ...... 2

*Jones v. Block,* 549 U.S. 199 (2007) ....................................................................... 10

*Kelly-Brown v. Winfrey*, 717 F. 3d 295 (2d Cir. 2013) ............................................. 9

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003) ................. 13

*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007) ............................... 12

*Leveto v. Lapina*, 258 F.3d 156 (3d Cir. 2001) ................................................. 10,11

HF 9941054v.2

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936
(9th Cir. 2011) ........................................................................ 6,8

*Mason v. Zoom Tech, Inc.*, 2010 WL 3075556 (N.J. App. Div. 2010) ................... 13

*Nat'l Rural Telecomms. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040
(C.D. Cal. 2003) ......................................................................... 15

*Novins v. Cannon*, 2010 WL 1688695 (D.N.J. 2010) ............................................ 11

*Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*, 2010 WL 1381005
(D.N.J. 2010) ............................................................................... 3

*Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739 (1989) ................. 13

*Production Res. Grp., LLC v. Martin Prof'l A/S*, 907 F. Supp. 2d 401 (S.D.N.Y.
2012) ....................................................................................... 4

*Rosetta Stone, Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012) ......................... 10

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*,
2010 WL 1799456 (D.N.J. 2010) .................................................... 12

*Strassle v. Bimbo Foods Bakeries Distrib., Inc.*, 2013 WL 1007289
(D.N.J. 2013) ............................................................................. 15

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F. 3d 93 (2d Cir. 2010) ........................... *passim*

*Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463 (S.D.N.Y. 2008) ................... 7

*Vulcan Capital Corp. v. Miller Res. Energy, Inc.*, 2014 WL 4384159
(S.D.N.Y. 2014) ......................................................................... 3

*Wexco Indus. v. ADM21 Co.*, 2008 WL 5427867 (D.N.J. 2008) ...................... 13,14

## Statutes

Communications Decency Act, 47 U.S.C. § 230(c)(2)(A) ............................ *passim*

HF 9941054v.2

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1

Fed. R. Evid. 201 ........................................................................................................ 9

iv

Defendant Google Inc. ("Google") respectfully submits this reply memorandum of law in further support of its motion (i) to transfer this case to the Northern District of California or, alternatively, (ii) to dismiss the Amended Complaint ("AC") pursuant to Rule 12(b)(6) for failure to state a claim.

## POINT I

### THE DDA'S FORUM SELECTION CLAUSE REQUIRES TRANSFER

Plaintiff does not challenge the enforceability of the DDA's[1] forum selection clause, which unambiguously requires the parties "to resolve <u>any</u> legal matter arising from this [DDA]" in California. Instead, Plaintiff argues that its claims do not "aris[e] from" the DDA because they "ha[ve] nothing to do with the parties' performance under ...or interpretation of the DDA" — *i.e.*, they do not sound in contract — "and would exist whether or not there was a DDA." (PB[2] 21-22) This argument fails on the facts and the law.

Plaintiff ignores that its entire relationship with Google arises from the DDA. The AC alleges that (1) developers wishing to offer apps on Google Play must abide by Google policies incorporated into its DDA;  (2) Plaintiff established

---

[1] As used herein, "DDA" refers to the Developer Distribution Agreement between Google and Plaintiff. "Plaintiff's App" refers to an app allegedly developed by Plaintiff for download to mobile devices using the Android operating system. As detailed in Google's moving brief, Plaintiff's App was distributed for free through a digital distribution platform known as "Google Play."

[2] As used herein, "DB__" refers to Google's moving brief and "PB__" refers to Plaintiff's brief opposing Google's motion.

an account on Google Play (which required acceptance of the DDA); and (3) Plaintiff complied with Google's policies. (AC ¶¶20,42,66-68,77-78) Had Plaintiff not agreed to the DDA, Plaintiff's App could not have been distributed on Google Play, Google's allegedly different treatment of other app providers would be irrelevant, and Plaintiff could not claim damages based upon Google's suspension of Plaintiff's Google Play account or Google's removal of Plaintiff's App from Google Play. Indeed, Plaintiff admits that its damages flow from the loss of downloads of Plaintiff's App from Google Play.[3] (PB 23) Moreover, Google's defenses include that it acted within its rights under the DDA and the same policies that Plaintiff admits are incorporated into the DDA. (AC ¶20; DDA §§ 4.11, 7.2, 9.2) This action certainly involves interpretation of the DDA and Google's rights under the DDA and, as such, is a "legal matter arising from" the DDA.

As made clear in *John Wyeth & Bros., Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070 (3d Cir. 1997), cited by Plaintiff, it is of no significance that the AC does not include a breach of contract claim. In *John Wyeth*, the Third Circuit enforced a forum selection clause requiring litigation in England, rejecting the plaintiff's argument that the forum selection clause would apply only if its claims were based

---

[3] Plaintiff admits that the free downloads have no "actual monetary value," but asserts an extremely attenuated and speculative argument for lost profits damages. (PB 23) Plaintiff contends that because Google suspended its Google Play account, fewer users downloaded Plaintiff's App, causing fewer users to visit its website, causing even fewer users to click on advertisements on Plaintiff's website, with the result that Plaintiff lost revenue under the AdSense program.

upon or grew out of the parties' contract. *Id.* at 1074. The Court looked to the specific language of the forum selection clause, which applied to "disputes" rather than "claims," that bore the requisite relationship to the contract. *Id.* Similarly, here, the forum selection clause is not limited to "claims" but rather applies to "any legal matter" arising from the DDA.

Plaintiff cannot avoid the forum selection clause by pleading only non-contractual claims, including a claim for contributory infringement. *See e.g., Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*, 2010 WL 1381005, at *5-7 (D.N.J. 2010) (forum selection clause governed claim for contributory infringement against Google, in part, because the claimed damages arose from alleged infringers' use of Google's AdWords service and Google's defenses would rely upon the terms of the parties' AdWords contract).[4]

Plaintiff's reliance on factually distinguishable cases interpreting "arising out of" and "arising under" language is also unavailing. *See, e.g., Vulcan Capital Corp. v. Miller Res. Energy, Inc.*, 2014 WL 4384159 (S.D.N.Y. 2014) (forum selection clause in Warrants did not apply to plaintiff's action seeking to recover Warrants because the gravamen of the action was a breach of the pledge agreement and not a breach of the Warrants); *Driftwood Hospitality Mgmt., LLC v. Centimark*

---

[4] *See also Crescent Int'l, Inc. v. Avatar Cmties, Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988) (collecting cases demonstrating "that pleading alternative non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms").

3

*Corp.*, 2014 WL 4825274, at *3 (S.D. Fla. 2014) (forum selection clause in a roof warranty did not apply to a claim that the roofer breached the parties' contract (embodied in a purchase order) by failing to complete the agreed construction work; the forum selection clause applied only to "claims arising under/or pursuant to the terms of this Warranty").[5] The DDA's forum selection clause applies to this "legal matter" that plainly "arises from" the DDA. Plaintiff cannot both rely on provisions in the DDA and Google's policies to support its claims and then disavow any relationship of those claims to the DDA merely to avoid application of the forum selection clause.

## POINT II

### THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR CONTRIBUTORY INFRINGEMENT

Plaintiff's primary argument against dismissal of its contributory trademark infringement claim is that it should be entitled to take discovery to "test" its allegations. (PB 26) But as the Supreme Court made clear in *Ashcroft v. Iqbal*, 556 U.S. 662, 685(2009), "'[i]t is no answer to say that a claim just shy of a plausible

---

[5] *See also Cape Flattery, Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 924 (9th Cir. 2011) (forum selection clause did not apply to action for indemnification and contribution under Oil Pollution Act because the dispute did not turn on either the defendant's performance of, or an interpretation of, the salvage contract); *Production Res. Grp., LLC v. Martin Prof'l A/S*, 907 F. Supp. 2d 401, 414 (S.D.N.Y. 2012) (forum selection clause applied to patent infringement claims because "the patent claims relate to the very agreement that governed Defendants' use of Plaintiff's patents").

entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side'…," *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

Here, Plaintiff seeks to fish for facts it hopes will support its implausible theory that Google should be deemed to have had actual or red-flag knowledge of other apps that infringed on Plaintiff's trademark rights because (1) Google allegedly had the ability to and, "upon information and belief," did regularly monitor content on Google Play (AC ¶¶27-28, 32), and (2) Plaintiff submitted non-trademark spam and spyware complaints about other apps despite Google having a specific trademark complaint procedure, which was also incorporated into the DDA that Plaintiff admittedly accepted. On their face, these allegations fail to support a claim for contributory infringement as a matter of law.[6]

First, distinct even from *Tiffany (NJ), Inc. v. eBay, Inc.* 600 F. 3d 93 (2d Cir. 2010), Google's duty to Plaintiff is defined by the terms of the DDA and Google's policies incorporated therein, which expressly disclaim any obligation on Google's

---

[6] Plaintiff cites *Gray v. BMW of North America, LLC*, 2014 WL 4723161, at *3 (D.N.J. Sep. 23, 2014) to argue that questions of "knowledge" should be determined through discovery. (PB 26-27) But *Gray* is inapposite because it involved a claim for fraudulent concealment. In that specific context, the court emphasized that "[b]ecause this is a fraudulent concealment case involving the internal doings [of the defendant] those facts are within the Defendant's knowledge and are properly to be determined though discovery…." In contrast, there are no allegations of fraudulent concealment here.

part of Google to monitor Google Play. (DB 6) Plaintiff's allegation that Google had the ability to and did monitor Google Play is therefore a red herring, contradicted directly by the express terms of the DDA. Because Plaintiff admits it accepted the terms of the DDA and its associated policies, which included Google's trademark complaint process, Plaintiff cannot now seek to impose some greater legal "monitoring" burden on Google. Moreover, Plaintiff's "monitoring" allegations merely parrot in conclusory form an element of pleading contributory trademark infringement, but are devoid of substantiating factual allegations. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942 (9th Cir. 2011) (requiring proof of "'[d]irect control and monitoring of the instrumentality used by a third party to infringe'") (citations omitted).[7]

Second, even apart from the DDA, Plaintiff's contention that Google was legally obligated to regularly monitor Google Play for allegedly infringing content

---

[7] Plaintiff argues disingenuously that "[t]he record after the Complaint was filed also shows that Google is fully capable of independently monitoring the content on Google Play and identifying infringing apps that should be removed" (PB 27, n.10; *citing* Freeman Decl. ¶¶ 3-4 and Exs. 1, 2) and that these same email notices show that Google is "perfectly capable of finding and taking down apps...." (PB 31, n.14) In fact, these exhibits are two emails sent after the "Spy Phone 1.0" app was referenced for the first time in the AC. The emails contain links to Google Play landing pages that show that Google removed the "Spy Phone 1.0" app and its updated version "Spy Phone 2.0." (Werbin Dec. ¶¶ 3-4, Exs. A, B) They were removed because "Spy Phone 1.0" was identified in the AC, which Google elected to treat as a specific trademark complaint. *See* DB 12, n.5. Indeed, Freeman Exhibit 1 expressly includes this reference: **"Attachments: Spy Phone Amended Complaint.PDF."** Thus, the removal of these apps had nothing whatsoever to do with Google "monitoring" or independently "identifying" infringing apps.

is not supported by case law and would impose an unconscionable legal burden on any online service provider.[8] This is particularly true here where Plaintiff alleges that Google Play is responsible for 90% of all Android-based mobile app downloads. (PB 3) Google has a trademark complaint process in place to enable it to assess and respond specifically to such complaints, while at the same time notifying and providing fair notice to users of the subject apps. Plaintiff admits that it freely elected not to continue use of this trademark complaint process because it did not want its identity disclosed; this fact alone should be sufficient to warrant dismissal.

Third, the law does not impose upon online service providers any affirmative obligation to remove content in response to every trademark infringement complaint because of the inherent difficulty in assessing likelihood of confusion. As discussed in Google's moving brief, the assessment of likelihood of confusion is based on a multiplicity of factors, which present challenges even for the courts. Yet even in *Tiffany*, which involved counterfeit goods identified by Tiffany itself, the Second Circuit held that eBay's general knowledge that its

---

[8] The District Court's opinion in *Tiffany* (affirmed on the issue of contributory infringement), emphasized that "eBay refused, however, to monitor its website and preemptively remove listings of Tiffany jewelry before the listings became public. The law does not impose liability for contributory trademark infringement on eBay for its refusal to take such preemptive steps in light of eBay's 'reasonable anticipation' or generalized knowledge that counterfeit goods might be sold on its website." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 470 (S.D.N.Y. 2008), *aff'd in part, rev'd in part*, 600 F.3d 93 (2d Cir. 2010) (emphasis added).

7

website was being used to sell counterfeit Tiffany products was, "[w]ithout more,…insufficient to trigger liability" for contributory trademark infringement. *Tiffany*, 600 F.3d at 110. Since eBay "did not ignore the information it was given about counterfeit sales on its website," it was not willfully blind to the problem. *Id.* (Emphasis added.) Thus, the act of responding to specific infringement complaints is what *Tiffany* teaches.

As Plaintiff notes, the Second Circuit observed that even if eBay had been able to inspect the relevant goods, "it would not have the expertise to determine whether they were counterfeit." *Tiffany*, 600 F.3d at 98. Contrary to Plaintiff's argument (PB 28), however, neither Google nor any other online service provider can always determine with certainty whether a product offered for sale though an online marketplace unequivocally infringes a third party's trademark rights or, conversely, falls into a non-infringing area of descriptive use.

Plaintiff's citation of *Louis Vuitton Malletier,* 658 F.3d 936, only supports Google's position. Defendants hosted websites that facilitated sales of counterfeit products and totally failed to respond to 18 specific "Notices of Infringement." *Id.* at 940. Rather than alleging only general knowledge of infringement, Louis Vuitton alleged that the defendants had actual knowledge of infringements based on these *specific* Notices of Infringement, which had been intentionally ignored. In contrast, Google responded to each of Plaintiff's specific trademark complaints and

8

removed the allegedly infringing apps from Google Play, save one that it could not determine on its face infringed Plaintiff's mark because of its name: "Reptilicus.net Brutal Spy Phone." Nevertheless, Google responded to Plaintiff's specific complaint about that app and advised Plaintiff that it was "unable to determine its merits at this time."[9]

The Court can also take judicial notice of the plethora of online references to the phrases "spy phone" and "phone spy." Fed. R. Evid. 201. An online search revealed over 600,000 hits, many of which are clearly used descriptively in a non-trademark sense.[10] This further highlights the difficulty in assessing infringement claims, even in response to specific complaints.

While acknowledging the validity of the *Tiffany* legal standard in the context of online marketplaces, Plaintiff cites no authority to support its expansive view of that law and provides no cogent reason why a dismissal motion cannot be the vehicle for weeding out claims that on their face do not satisfy that legal standard. *See Kelly-Brown v. Winfrey*, 717 F. 3d 295, 314 (2d Cir. 2013) (affirming

---

[9] Plaintiff's allegation that an "equally plausible explanation as to why this infringing app was not removed…is that the developer of this app may have had an agreement with someone at Google not to remove it" (PB 29, n.12) is entirely speculative and implausible; indeed, Plaintiff does not deny that the use of "spy phone" in this app's name was merely descriptive. Even if true, this allegation cannot legally impose vicarious liability on Google for the *ultra vires* act of some hypothetical rogue employee (*see infra* at 13).

[10] *See* Werbin Decl. ¶6 and Ex. C (and the website pages collected therein).

dismissal of claim for contributory trademark infringement).[11]

Neither *Tiffany* nor any other case cited by Plaintiff support a legal conclusion that an infringing product must be <u>removed</u> — rather than <u>investigated</u> — upon notice that it might be infringing. The acts of investigating and responding preclude any finding of "willful blindness." Indeed, the Second Circuit noted in *Tiffany* that "contributory liability may arise where a defendant is (as was eBay here) made aware that there was infringement on its site <u>but (unlike eBay here) ignored that fact</u>." 600 F.3d at 110, n. 15 (emphasis added). Because Google did not ignore any trademark infringement complaint submitted by Plaintiff, Plaintiff's claim for contributory infringement fails as a matter of law.

## POINT III

## THE TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED

### A.    Section 230 of the CDA Requires Dismissal of the Claim

"A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Block*, 549 U.S. 199, 215 (2007); *see also Leveto v. Lapina*, 258 F.3d 156, 161 (3d

---

[11] Plaintiff's citation to *Rosetta Stone, Ltd. v. Google, Inc.*, 676 F.3d 144, 164 (4th Cir. 2012), likewise supports Google's position here.  (PB 26) *Id.* at 163 (reversing summary judgment on contributory infringement claim because of factual dispute as to whether Google was on notice of infringement because Rosetta Stone notified Google of approximately 200 advertisements for allegedly counterfeit products and Google continued to allow these same advertisers to run ads using the Rosetta Stone Marks as keyword triggers and in ad text).  Unlike Rosetta Stone, Plaintiff does not allege that Google failed to respond to any specific trademark complaint.

Cir. 2001) ("a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face" (internal quotation marks omitted).[12] Here, even accepting the AC's allegations as true, Google's immunity under the CDA is apparent from the face of the pleading.

Plaintiff does not dispute that Google meets two of the three requisites for Section 230(c)(2)(A) immunity: Google provides an "interactive computer service" and Google deemed Plaintiff's App as "otherwise objectionable." (PB 34) Instead, Plaintiff contends that on its face, the AC does not establish that Google acted in "good faith" in removing Plaintiff's App from Google Play. (PB 34-36)

The AC's allegations confirm that, at most, Google did what it was entitled to do under the DDA. According to Plaintiff, Google removed its App from Google Play upon receiving an allegedly false complaint and advised Plaintiff that its app was removed for violating Google's spyware policy. (AC ¶¶60-61) Notably, Plaintiff does not allege that Google knew the complaint to be false. (AC ¶¶60-65) In the face of these facts, Plaintiff's allegation that Google had "no real justification" for its actions is conclusory and insufficient to plead an absence of

---

[12] Contrary to Plaintiff's argument, the courts have not "universally" described CDA immunity as an affirmative defense. (PB 33) *See e.g., Novins v. Cannon,* 2010 WL 1688695, at *3 (D.N.J. 2010) (defamation claims dismissed because on the face of the complaint, certain defendants were entitled to CDA immunity); *Dobenko v. Google Inc.,* 991 F. Supp. 2d 1219, 1220 (S.D.Fla. 2013) (infringement claim dismissed on grounds of CDA immunity because complaint failed to plead that the allegedly infringing content originated with Google). Google's assertion of CDA immunity is properly considered on a motion to dismiss.

good faith.[13] Indeed, whether based upon a third party complaint or Google's own initiative, Google's decisions to remove content that it deemed objectionable fall squarely within the immunity conferred by CDA § 230(c)(2)(A). *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007).

Furthermore, the allegations relating to an anonymous letter Plaintiff purportedly received from a former Google Play employee (AC ¶104) do not provide a sufficient factual basis for an allegation that Google acted in bad faith. Even if that anonymous letter could be credited – and it cannot – it allegedly describes actions of other unidentified Google employees who "orchestrated" the removal of Plaintiff's App from Google Play in order to further their **own** improper activities. (AC ¶¶103-106) This does not equate to any bad faith on Google's part even if it could be seen as such for the individual unidentified employees or their purported co-conspirators. As such, and given Plaintiff's continued failure to submit the letter to the Court or Google, these allegations simply do not "raise a plaintiff's right to relief above a speculative level, such that it is 'plausible on its face.'" *Ashcroft, supra*, 556 U.S. at 678 (*cites omitted*).

---

[13] *Compare Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, 2010 WL 1799456, at *7  (D.N.J. 2010) (denying motion to dismiss on ground of CDA § 230(c)(2)(A) immunity; complaint contained specific factual allegations that defendant Comcast had acted in bad faith by attempting to induce plaintiff consumer to subscribe to a more expensive service).

Even if these implausible "facts" are assumed true, they do not support any inference that Google, as opposed to employees clearly acting outside their authority, committed any wrongful act. Neither Plaintiff's brief nor the AC address vicarious liability, and thus implicitly concede that Google is not liable for any *ultra vires* conduct by its employees. *See, e.g., Mason v. Zoom Tech, Inc.*, 2010 WL 3075556, at *10 (N.J. App. Div. 2010) ("Ordinarily, if the employee deviates from the business of his employer and, while in the pursuit of his own ends, commits a tort, the employer is not liable"); *Delfino v. Agilent Techs., Inc.,* 145 Cal. App. 4th 790, 812-14 (2006) (employer is not liable "for an employee's malicious or tortious conduct if the employee substantially deviates from the employment duties for personal purposes"). Accordingly, the AC pleads facts showing only that Google acted in good faith. Google is therefore immune from liability and CDA § 230(c)(2)(A) bars Plaintiff's claim for tortious interference.

## B.    Plaintiff has Failed to State a Tortious Interference Claim

First, as set forth above, the AC does not even adequately plead that Google acted with bad faith, much less that Google acted with "malice" as required to plead a claim of tortious interference with prospective economic advantage. *See Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751-52 (1989); *Wexco Indus. v. ADM21 Co.*, 2008 WL 5427867, at *7 (D.N.J. 2008); *accord Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003).

13

On this point, Plaintiff again argues that Google suspended Plaintiff's Google Play account with "no real justification." But this conclusory allegation certainly does not plead malice, particularly in light of the AC's recitation of the reasons for Google's decision. (AC ¶¶60-61) Plaintiff also points to Google's alleged failure to take action against other developers who Google "knew" to be infringing on Plaintiff's trademark. (PB 38) But as discussed in Point II, *supra*, Google did not ignore any of Plaintiff's specific trademark complaints (AC ¶¶48-54) and Plaintiff intentionally stopped submitting such complaints so as to shield its identity from alleged infringers. (AC ¶¶89-90) Moreover, Google's alleged failure to remove allegedly infringing apps (addressed in Point II, *supra*) or suspend other developer's accounts was within Google's "sole discretion" under the DDA. (DDA §7.2(f)) Google's exercise of its contract rights cannot support a finding of malicious or tortious conduct. *Wexco*, 2008 WL 5427867, at *8.

Second, Plaintiff cannot overcome the economic loss doctrine because Plaintiff has failed to allege that Google acted wrongfully by doing anything that was not permitted by the DDA. As such, Plaintiff has not alleged a wrong outside the parties' contractual relationship and the tortious interference claim is barred by the economic loss doctrine. *See Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002).

Finally, Plaintiff's attenuated claim for consequential lost profits damages is barred by the express terms of the DDA. (DDA ¶12). Plaintiff does not challenge the enforceability of this provision, and indeed such provisions are regularly enforced in New Jersey and California. *See Nat'l Rural Telecomms. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040, 1055 (C.D. Cal. 2003); *Strassle v. Bimbo Foods Bakeries Distrib., Inc.*, 2013 WL 1007289, at *5 (D.N.J. 2013).

## CONCLUSION

For all the foregoing reasons, Google respectfully requests that (i) all claims against it be transferred to the Northern District of California; or, in the alternative, (ii) Counts II and III of the Amended Complaint be dismissed, with prejudice and with costs awarded to Google.

Dated:  March 30, 2015

Respectfully submitted,
HERRICK, FEINSTEIN LLP
*Attorneys for Defendant Google Inc.*

By: _Patricia M. Graham_

Patricia M. Graham, Esq.
Barry Werbin, Esq. (admitted *pro hac vice*)

15

HF 9941467v.1