UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPY PHONE LABS LLC., <br><br>  Plaintiff, <br><br> v. <br><br> GOOGLE INC., et al., <br><br>  Defendants. | Case No. 15-cv-03756-PSG <br><br> **ORDER GRANTING MOTION TO DISMISS AS TO GOOGLE** <br><br> **(Re: Docket No. 35)** |

After registering SPY PHONE as a trademark, Plaintiff Spy Phone Labs LLC submitted its Android app, named "SPY PHONE® Phone Tracker," to Defendant Google Inc.'s Play Store.[1] The app racked up over a million downloads, and at SPL's behest Google took down a number of competing apps with names too similar to the SPY PHONE mark.[2] Sometime in 2013, however, SPL claims that Google stopped enforcing SPL's trademark and, worse yet, suddenly and unjustifiably removed SPL's app from the Play Store.[3] Because of these and other actions, SPL alleges that Google is liable to it for contributory trademark infringement and tortious interference with prospective economic advantage.[4] Google now moves to dismiss for failure to state a claim.[5] Google's motion is GRANTED, but with leave to amend.

---

[1] Docket No. 17 at ¶¶ 29, 42-47.

[2] *See id.* at ¶¶ 46-54.

[3] *See id.* at ¶¶ 58-63, 81-86, 89-90.

[4] *See id.* at ¶¶ 130-150.

[5] *See* Docket No. 35.

1
Case No. 15-cv-03756-PSG
ORDER GRANTING MOTION TO DISMISS AS TO GOOGLE

## I.

SPL first established its Google developer account sometime around August 2012.[6] SPL's app allows authorized third parties, usually parents or guardians, to track where a particular phone is located and how it is being used.[7] The app stores the information it collects on SPL's secure server, and SPL only allows authorized users to view the data.[8] As an added protection against misuse, the app periodically displays an icon so that the user always knows that the app is running.[9] The app is free to use, but SPL generates revenue through Google-provided ads placed on SPL's "spyphone.com" website.[10] The more app users, the more traffic to the website—and the more revenue for SPL.[11]

Between August 2012 and June 2013, over 1.1 million users downloaded the app from Google's Play Store, making it one of the most popular apps in that period.[12] The app's success generated significant advertising revenues through the SPL website.[13] Throughout this period, SPL regularly used Google's online complaint form to submit trademark infringement complaints about similarly named apps, and Google regularly responded by taking down the offending apps.[14] Whenever Google removed an app for infringing SPL's mark, it sent the app developer a notification containing the complainant's name and email address.[15]

---

[6] *See* Docket No. 17 at ¶ 42.

[7] *See id.* at ¶ 43.

[8] *See id.* at ¶¶ 34-35.

[9] *See id.* at ¶ 36.

[10] *See id.* at ¶¶ 37-38.

[11] *See id.* at ¶¶ 39-40.

[12] *See id.* at ¶ 46.

[13] *See id.* at ¶¶ 46-47.

[14] *See id.* at ¶¶ 48-51.

[15] *See id.* at ¶ 50.

2
Case No. 15-cv-03756-PSG
ORDER GRANTING MOTION TO DISMISS AS TO GOOGLE

In May of 2013, SPL submitted one such trademark infringement complaint about an app named "Spy Phone App," and Google again took down the app.[16] Almost immediately, the app's developer, Defendant Andrei Ciuca, emailed SPL's representative complaining about the removal.[17] SPL's representative responded that Ciuca's chosen name infringed SPL's trademark and that Ciuca had to use a different name.[18]

From that point, the relationship between Google and SPL eroded. Soon afterwards, SPL submitted a trademark infringement complaint about another app, called "Reptilicus.net Brutal Spy Phone."[19] But this time, instead of removing the app, Google said that it was "unable to determine the merits of [SPL's] claim" and took no action.[20] And on June 28, 2013, the Google Play team removed SPL's own app, citing violations of Google's anti-spyware policy.[21] Google gave SPL no prior warning, and SPL's app in fact complied fully with that policy.[22] SPL alleges, on information and belief, that Ciuca caused Google's sudden about-face by making a false complaint about SPL's app.[23]

SPL appealed the removal using Google's internal process and even filed suit, all to no avail.[24] Eventually, Google explained that although none of the functions of SPL's app violated the anti-spyware policy, the name itself was unacceptable because it contained the word "spy."[25]

---

[16] *Id.* at ¶¶ 53-54.

[17] *See id.* at ¶¶ 54-55.

[18] *See id.* at ¶ 56.

[19] *Id.* at ¶ 58.

[20] *Id.* at ¶ 59.

[21] *See id.* at ¶¶ 60-61.

[22] *See id.* at ¶¶ 62-63.

[23] *See id.* at ¶¶ 63-64.

[24] *See id.* at ¶¶ 66-70.

[25] *Id.* at ¶¶ 71-73.

SPL's counsel observed that other apps used the same word, but Google promised that it intended to prohibit all developers from doing so in the future.[26]

Given that representation, SPL decided to drop its lawsuit and relaunch its app under the name "Phone Tracker."[27] In October 2013, Google reinstated SPL's developer account, but it first deleted all the consumer reviews and records of downloads for SPL's original app, meaning that SPL's app lost the high ranking it had boasted before.[28] In its first ten months, the new app managed only 260,000 downloads, leading to a steep reduction in SPL's advertising revenue.[29] Meanwhile, other apps continued to use "spy" in their names with impunity.[30]

In January 2014, SPL again started submitting complaints about apps that used either the word "spy" or the mark SPY PHONE.[31] Now, however, instead of using the trademark infringement complaint form—which tipped the target apps' developers off about SPL's identity—SPL asserted violations of the same anti-spyware policy that Google had cited when taking down SPL's app.[32] In July 2014, SPL made one of these complaints about another Ciuca app that used the word "spy" in its name.[33] Within days, Google again suspended SPL's account without warning, this time for purportedly violating Google's spam policy.[34] Again, SPL claims that its app complied with that policy, but that Ciuca had submitted a false complaint.[35]

---

[26] *See id.* at ¶¶ 74-75.

[27] *See id.* at ¶¶ 76, 78.

[28] *See id.* at ¶ 77.

[29] *See id.* at ¶¶ 79-80.

[30] *See id.* at ¶¶ 81-88.

[31] *See id.* at ¶ 89.

[32] *See id.* at ¶ 90.

[33] *See id.* at ¶¶ 91-92.

[34] *See id. at ¶¶* 93-94.

[35] *See id.* at ¶¶ 95-96.

According to SPL, multiple Play Store parental monitoring apps can be traced back to Ciuca—which in itself violates Google's policies—and several of these apps contain the word "spy," or even the phrase "Spy Phone," in their names.[36] In addition, SPL alleges that it received a letter from a "concerned" member of the Google Play team confirming SPL's suspicions.[37] And after Google took down SPL's app for the second time, Google searches for the phrase "spy phone" started to list competing apps before SPL's website; in fact, the top-listed result is now an app that infringes SPL's trademark.[38]

In October 2014, SPL filed this suit in the District of New Jersey.[39] In August of last year, that court granted Google's motion to transfer the case here.[40] In the operative complaint, SPL alleges three causes of action: (1) direct trademark infringement[41] against Ciuca and a number of unnamed Defendants; (2) contributory trademark infringement against Google and (3) tortious interference with prospective economic advantage against all Defendants.[42] Ciuca and the unnamed Defendants have not yet been served.

## II.

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The parties who have appeared have consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[43]

---

[36] *Id.* at ¶¶ 98-102.

[37] *Id.* at ¶¶ 103-106.  The complaint does not include a copy of the letter.

[38] *Id.* at ¶¶ 107-115.

[39] *See* Docket No. 1.

[40] *See* Docket No. 22.

[41] *See* 15 U.S.C. § 1114(a).

[42] *See* Docket No. 17 at ¶¶ 122-150.

[43] *See* Docket Nos. 28, 31.  Because Ciuca has not yet been served, the court has no jurisdiction over him.  *See Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).  Therefore, Ciuca is not a party under

## III.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[44] When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[45] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[46] Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[47] Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[48]

At this stage of the case, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[49] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference and matters of which the court may take judicial notice.[50] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact or unreasonable inferences.[51]

---

Section 636, and the court need not obtain his consent before issuing a case-dispositive ruling. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995); *Third World Media, LLC v. Does 1-1568*, Case No. 10-cv-04470, 2011 WL 4344160, at *3 (N.D. Cal. Sept. 15, 2011) (citing *Ornelas v. De Frantz*, Case No. 00-cv-01067, 2000 WL 973684, at *2 n.2 (N.D. Cal. June 29, 2000)).

[44] Fed. R. Civ. P. 8(a)(2).

[45] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[47] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[48] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[49] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[50] *See id.*

[51] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 (holding that "a wholly conclusory statement of [a] claim" will not survive a

1   Neither of SPL's claims against Google satisfies these standards.

2    *First*, SPL's complaint does not allege facts sufficient to state a claim for contributory

3   trademark infringement by Google.  To be liable for contributory infringement, Google must have

4   "continue[d] to supply [a] product to one whom it knows or has reason to know is engaging in

5   trademark infringement."[52]  In the specific context of an online marketplace, "a service provider

6   must have more than a general knowledge or reason to know that its service is being used to sell

7   counterfeit goods.  Some contemporary knowledge of which particular listings are infringing or

8   will infringe . . . is necessary."[53]  Notice of certain acts of infringements does not imply

9   generalized knowledge of—and liability for—others.[54]

10    For almost all of the allegedly infringing apps, SPL has not alleged that Google had notice

11   of those specific acts of infringement.[55]  When SPL did complain about these apps, it intentionally

12   made spyware complaints instead of trademark complaints in order to remain anonymous.[56]  But

13   spyware complaints are not the same as trademark complaints, and Google could not be expected

---

motion to dismiss).

[52] *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *see also Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999) (finding contributory infringement given "[d]irect control and monitoring of the instrumentality used by a third party to infringe"). Contributory infringement also applies if a defendant "intentionally induces another to infringe a trademark," *Inwood Labs*, 456 U.S. at 854, but SPL does not allege this form of infringement.

[53] *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010); *see also Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) ("Plaintiffs asserting contributory trademark infringement claims must prove that defendants provided their services with actual or constructive knowledge that the users of their services were engaging in trademark infringement.").

[54] *See Free Kick Master LLC v. Apple Inc.*, Case No. 15-cv-03403-PJH, 2015 WL 6123058, at *6 (N.D. Cal. Oct. 19, 2015); *Academy of Motion Picture Arts & Sciences v. GoDaddy.com, Inc.*, Case No. 10-cv-03738-AB, 2015 WL 5311085, at *52 (C.D. Cal. Sept. 10, 2015).

[55] SPL's allegation that Google actually knew of particular infringing apps, *see* Docket No. 17 at ¶ 134, is a conclusory statement that the court need not take as true.  *See Iqbal*, 556 U.S. at 678.

[56] *See id.* at ¶ 90.

7
Case No. 15-cv-03756-PSG
ORDER GRANTING MOTION TO DISMISS AS TO GOOGLE

to respond to a complaint about one offense by investigating another.  Absent specific notice of trademark infringement, Google cannot be liable for contributory infringement merely for failing to remove infringing apps preemptively.[57]

The only instance where SPL did notify Google of infringement involved the "Reptilicus.net Brutal Spy Phone" app.[58]  But Google did not ignore that notification.  Instead, it investigated and responded that it could not assess the merits of the claim.[59]  As Google now points out, that app may have used the words "Spy Phone" simply as a descriptor, as opposed to the distinctive prefix "Reptilicus.net Brutal"—a characteristic that would constitute a defense to trademark infringement.[60]  This kind of "uncertainty of infringement" is "relevant to the question of an alleged contributory infringer's knowledge."[61]  Here, that uncertainty, combined with Google's investigation and response, undercuts SPL's assertion that Google had actual notice of that infringement.  Without any allegations rendering plausible actual notice of any infringement, Google cannot be liable.

***Second***, SPL has not stated a claim for tortious interference because it has not pled that Google committed any "act that is wrongful apart from the interference itself."[62]  In opposition to Google's motion, SPL argues that Google's actions render it liable for unfair competition under

---

[57] *Cf. Free Kick Master*, 2015 WL 6123058, at *6 ("The SAC alleges no facts showing that . . . Google . . . knew that the third-party developers' apps/games were infringing plaintiff's mark but continued to allow the infringing apps/games to remain available in the application stores.").

[58] Docket No. 17 at ¶¶ 58-59.

[59] *See id.* at ¶ 59.

[60] *See* 15 U.S.C. § 1115(b)(4).

[61] *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 964 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999); *see also id.* at 963 ("The mere assertion by a trademark owner that a domain name infringes its mark is not sufficient to impute knowledge of infringement . . . .").

[62] *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003).

8
Case No. 15-cv-03756-PSG
ORDER GRANTING MOTION TO DISMISS AS TO GOOGLE

Cal. Bus. & Prof. Code § 17200—a cause of action that does not appear in SPL's complaint.[63]  As Google observes, unfair competition itself also depends on an independently unlawful act.[64]  Because SPL has not pled such an act, it has failed to state a claim for tortious interference with prospective economic advantage.[65]

## IV.

Google's motion to dismiss is GRANTED.  Dismissal without leave to amend is only appropriate if it is clear that the complaint could not be saved by amendment such as after a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[66]  Because this is the first time the court has ruled on the sufficiency of SPL's complaint, it cannot yet say that further amendment would be futile.  Leave to amend therefore is GRANTED.  SPL shall file any amended complaint within 21 days.

**SO ORDERED.**

Dated: March 21, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[63] *See* Docket No. 37 at 20-22.

[64] *See Korea Supply*, 29 Cal. 4th at 1143 (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)) ("Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices.").

[65] The court does not reach Google's remaining arguments for dismissing this claim.

[66] *Eminence Capital*, 316 F.3d at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).