1  Neil A. Smith (SBN 63777)
   RIMON P.C.
2  One Embarcadero Center, Suite 400
   San Francisco, CA 94111
3  Phone: (415) 377-9280
   Facsimile: (800) 930-7271
4  Email: neil.smith@rimonlaw.com

5

6  Michael A. Freeman (*Pro Hac Vice*)
   GREENBERG FREEMAN LLP
7  110 East 59th Street, 22nd Floor
   New York, NY  10022
8  Phone:  (212) 838-3121
   Facsimile:  (212) 838-5032
9  Email: freeman@greenbergfreeman.com

10 Attorneys for Plaintiff SPY PHONE LABS LLC

                UNITED STATES DISTRICT COURT
11
              NORTHERN DISTRICT OF CALIFORNIA
12
                    OAKLAND DIVISION
13

14 | SPY PHONE LABS LLC,          | Case No.:  5:15-CV-03756-KAW
   | Plaintiff,                   |
15 |                              | **PLAINTIFF SPY PHONE LABS LLC'S**
   | v.                           | **OPPOSITION TO DEFENDANTS'**
16 |                              | **MOTION TO DISMISS THE SECOND**
   |                              | **AMENDED COMPLAINT**
17 | GOOGLE INC., ANDREI CIUCA, d/b/a |
   | CAD DESIGN, and JOHN DOES 1-49,  |
18 | Defendants.                      | Hearing Date:  October 6, 2016
   |                                  | Time:          11:00 am
19 |                                  | Judge:         Honorable Kandis A. Westmore
   |                                  | Location:      U.S. District Courthouse
20 |                                  |                1301 Clay Street
   |                                  |                Oakland, CA 94612

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................... ii

I.      INTRODUCTION AND SUMMARY OF FACTS .................................... 1

II.     PROCEDURAL HISTORY .......................................................... 5

III.    ARGUMENT ........................................................................ 5

        A.      THE SAC STATES A CLAIM AGAINST GOOGLE FOR
                CONTRIBUTORY TRADEMARK INFRINGEMENT ................. 5

        B.      THE SAC STATES A CLAIM FOR TORTIOUS
                INTERFERENCE WITH CONTRACT ........................................ 13

        C.      THE SAC STATES A CLAIM FOR BREACH OF THE
                IMPLIED COVENANT OF GOOD FAITH AND FAIR
                DEALING IN THE DDA ................................................... 13

        D.      PLAINTIFF HAS STATED A CLAIM UNDER
                CALIFORNIA'S UCL ...................................................... 16

        E.      PLAINTIFF HAS STATED A CLAIM FOR TORTIOUS
                INTERFERENCE WITH PROSPECTIVE ECONOMIC
                ADVANTAGE .............................................................. 16

        F.      SECTION 230 OF THE CDA DOES NOT IMMUNIZE
                GOOGLE FROM LIABILITY HERE ................................... 19

                1.  CDA Immunity Cannot Be Determined on a Rule 12(b)(6)
                    Motion ................................................................ 19

                2.  Google Is Not Entitled To CDA Immunity Because It Is a
                    Content Provider .................................................... 20

                3.  Google Cannot Establish Good Faith at This Stage of the
                    Action ................................................................ 22

III.    CONCLUSION ........................................................................ 24

# **TABLE OF AUTHORITIES**

<u>Page</u>

### <u>CASES</u>

<u>Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.</u>,
No. CV 10-03738 AB (CWX), 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015)...... 5, 7, 10

<u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>,
7 Cal. 4th 503 (1994) ................................................................................13

<u>Batzel v. Smith</u>,
333 F.3d 1018 (9th Cir. 2003) ....................................................................20

<u>Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.</u>,
2 Cal. 4th 342 (1992) ..........................................................................14, 17

<u>Clark v. LG Electronics U.S.A., Inc.</u>,
No. 13-CV-485 JM JMA, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013)...............18

<u>Cortez v. Glob. Ground Support, LLC</u>,
No. 09-4138 SC, 2009 WL 4282076 (N.D. Cal. Nov. 25, 2009) ..........................16

<u>CYBERsitter, LLC v. Google Inc.</u>,
905 F. Supp. 2d 1080 (C.D. Cal. 2012) .................................................21

<u>Daly v. United Healthcare Ins. Co.</u>,
No. 10-CV-03032-LHK, 2010 WL 4510911 (N.D. Cal. Nov. 1, 2010).................14

<u>Darnaa, LLC v. Google, Inc.</u>,
No. 15-CV-03221-RMW, 2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ...............17

<u>e360Insight, LLC v. Comcast Corp.</u>,
546 F. Supp. 2d 605 (N.D. Ill 2008) ......................................................23

<u>Evans v. Hewlett-Packard Co.</u>,
No. C 13-02477 WHA, 2013 WL 4426359 (N.D. Cal. Aug. 15, 2013).................11

<u>e-ventures Worldwide, LLC v. Google, Inc.</u>,
No. 2:14-CV-646-FTM-29CM, 2016 WL 2758889 (M.D. Fla. May 12, 2016) .....19, 22

<u>Ferrington v. McAfee, Inc.</u>,
No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010)..................16

<u>Page</u>

Case No. 5:15-CV-03756-KAW

OPPOSITION TO MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Givemepower Corp. v. Pace Compumetrics, Inc.</u>,
   No. 07CV157 WQH RBB, 2007 WL 2345027 (S.D. Cal. Aug. 14, 2007)............17

<u>Google Inc. v. Am. Blind & Wallpaper</u>,
   No. C 03-5340JF(RS), 2007 WL 1159950 (N.D. Cal. Apr. 18, 2007)....................2

<u>Gray v. BMW of North America, LLC</u>,
   No. 13–cv–3417 (WJM)(MF), 2014 WL 4723161 (D.N.J. Sep. 23, 2014) ...........12

<u>Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.</u>,
   955 F.2d 1143 (7th Cir. 1992) .........................................................................6

<u>Holomaxx Technologies v. Microsoft Corp.</u>,
   783 F. Supp. 2d 1097 (N.D. Cal. 2011)................................................................20

<u>In re Google, Inc. Privacy Policy Litig.</u>,
   No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)......................21

<u>Jurin v. Google Inc.</u>,
   695 F. Supp. 2d 1117 (E.D. Cal. 2010) .................................................................21

<u>Korea Supply Co. v. Lockheed Martin Corp.</u>,
   29 Cal. 4th 1134 (2003) .........................................................................................16

<u>Lockheed Martin Corp. v. Network Solutions, Inc.</u>,
   194 F.3d 980 (9th Cir. 1999) ...................................................................................5

<u>Lockheed Martin Corp. v. Network Sols., Inc.</u>,
   985 F. Supp. 949 (C.D. Cal. 1997), <u>aff'd,</u> 194 F.3d 980 (9th Cir. 1999) ...............10

<u>Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.</u>,
   658 F.3d 936 (9th Cir. 2011) ....................................................................................5

<u>Marsu, B.V. v. Walt Disney Co.</u>,
   185 F.3d 932 (9th Cir. 1999) ..................................................................................13

<u>Mmubango v. Google, Inc.</u>,
   No. CIV.A. 12-1300, 2013 WL 664231(E.D. Pa. Feb. 22, 2013) ...........................21

<u>Moving and Storage, Inc. v. Panayotov</u>,
   No. 12–12262–GAO, 2014 WL 949830 (D. Mass. Mar. 12, 2014).......................22

<u>Nedlloyd Lines B.V. v. Superior Court</u>,
   3 Cal. 4th 459 (1992).............................................................................................13

OPPOSITION TO MOTION TO DISMISS

1

Page

2

3

Opperman v. Path, Inc.,
   84 F. Supp. 3d 962 (N.D. Cal. 2015)..................................................21

4

Parker v. Google, Inc.,
   422 F. Supp. 2d 492 (E.D. Pa. 2006), aff'd, 242 F. App'x 833 (3d Cir. 2007) ......21

5

6

Peak-Las Positas Partners v. Bollag,
   172 Cal. App. 4th 101 (2nd Dist. 2009)...................................................14

7

8

Perfect 10, Inc. v. Google, Inc.,
   2008 WL 4217837 (C.D. Cal. 2008) ...................................................20

9

10

Philip Morris USA Inc. v. Liu,
   489 F. Supp. 2d 1119 (C.D. Cal. 2007) .................................................5

11

Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp.,
   221 Cal. App. 4th 867 (2d Dist. 2013) ..................................................14

12

Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,
   907 F. Supp. 1361 (N.D. Cal. 1995) ....................................................6

13

14

Rodman v. Safeway Inc.,
   No. 11-CV-03003-JST, 2015 WL 5117616 (N.D. Cal. Aug. 31, 2015) ................18

15

16

Rosetta Stone, Ltd. v. Google, Inc.,
   676 F.3d 144, 164 (4th Cir. 2012) .......................................................7

17

18

Spy Optic, Inc. v. Alibaba.Com, Inc.,
   No. CV1500659BROJCX, 2015 WL 7303763(C.D. Cal. Sept. 28, 2015) ...........8

19

Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015)..................................................20

20

21

Smith v. Trusted Universal Standards in Electronic Transactions, Inc.,
   Civ. No. 09–4567, 2010 WL 1799456 at * 7 (D.N.J. May 4, 2010) ......................23

22

23

Swift v. Zynga Game Network, Inc.,
   No. C 09-05443 SBA, 2010 WL 4569889 (N.D. Cal. Nov. 3, 2010) ....................20

24

Svenson v. Google Inc.,
   65 F. Supp. 3d 717 (N.D. Cal. 2014) ....................................................21

25

26

Talada v. City of Martinez, Cal.,
   No. C 08-02771 WHA, 2009 WL 382758 (N.D. Cal. Feb. 12, 2009) ...................12

27

28

OPPOSITION TO MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page

Tiffany (NJ) Inc. v. eBay Inc.,
  600 F.3d 93 (2d Cir. 2010) ....................................................................5, 7, 8, 10

Wolk v. Kodak Imaging Network, Inc.,
  840 F. Supp. 2d 724 (S.D.N.Y. 2012), aff'd, 569 F. App'x 51 (2d Cir. 2014) .......7

STATUTES

17 U.S.C. § 512(c) & (d) ....................................................................................7

47 U.S.C. § 230(c)(1) ........................................................................................20

47 U.S.C. § 230(c)(2)(A) ...................................................................................19

Cal. Com. Code § 2719 (West) .........................................................................18

Cal. Civ. Code § 1668 (West)............................................................................19

California Bus. & Prof Code § 17200 (West)........................................................16

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

I. <u>INTRODUCTION AND SUMMARY OF FACTS</u>

3

Plaintiff Spy Phone Labs LLC ("Plaintiff") submits this memorandum and points of

4

authorities in opposition to the motion to dismiss Plaintiff's Second Amended Complaint ("SAC")

5

filed by defendant Google, Inc. ("Google").[1]

6

Google's contention that the SAC contains "precisely the same facts" as the amended

7

complaint ("AC") that this Court previously dismissed with leave to amend is nothing other than

8

wishful thinking.  Undoubtedly, Google would love to make this case go away at the pleadings stage

9

and avoid discovery on the unlawful practices of Google and its employees alleged in the SAC.

10

Plaintiff, however, has pled sufficient facts as to each of its claims to withstand Google's motion to

11

dismiss.

12

13

The Court is respectfully referred to the SAC for a full statement of the allegations against all

14

defendants.  The SAC plausibly describes how and why Google, its employees, and other developers

15

of software applications for mobile phones ("apps") that compete with Plaintiff have gone to great

16

lengths to unlawfully prevent Plaintiff from using its federally registered trademark SPY PHONE®

17

and destroy what was once an exceedingly profitable business. A summary of the key events and

18

transactions alleged in the SAC that are relevant to this motion are described below.

19

20

Prior to defendants' unlawful conduct, Plaintiff was using its mark to brand and market an

21

app that parents could use to monitor the activities of their children on a mobile device ("Plaintiff's

22

App") on Google Play, Google's online marketplace for apps that run on the Android® operating

23

system.  (SAC ¶¶ 13-20, 37-47.) To prevent others from infringing on its trademark and associated

24

25

26

_____

[1] By separate motion filed herewith, Plaintiff seeks leave to supplement the SAC pursuant to Fed. R.
Civ. P. 15(d) to add new claims based on events that have occurred after the filing of the SAC.  Some
of these recent events are described below and referenced in the Declaration of Dan Parisi as they
are pertinent to this motion.

27

28

good will, starting around November 2012, Plaintiff routinely submitted trademark complaints using Google's online complaint form requesting that Google remove apps that were listed on Google Play with names that copied or incorporated Plaintiff's mark.  (SAC ¶ 68.)  For several months, Google complied with these requests by removing the infringing apps, although, unlike other online services, Google would often allow the infringing app to remain listed on Google Play for days and even weeks before the app was removed.  (SAC ¶¶ 71, 75-76.)  Due in large part to its foresight in obtaining and registering the mark and its enforcement of its rights in that mark, Plaintiff's App, marketed under the SPY PHONE® brand, routinely appeared as the top-ranked app in consumer searches for parental monitoring apps, which was critical to the success of Plaintiff's business.  (SAC ¶¶ 17-20, 61-63.) Plaintiff achieved its valuable high ranking naturally or organically, i.e., without paying Google for "key words" or other advertising add-ons for which Google charges a fee.[2]

Plaintiff's success apparently irked both its competitors, who were losing business to Plaintiff, and Google, who was generating less profit from Plaintiff's App because Plaintiff was able to succeed with paying Google additional fees.  The developers responded by filing false complaints about Plaintiff's App, describing Plaintiff's App as "spyware" which is prohibited from being listed on Google Play under Google's developer rules ("Developer Program Policies") as incorporated into the Developer Distribution Agreement ("DDA") that all app developers are required to sign to list apps on Google Play.  (SAC ¶¶ 21-27, 86-94.)  Google, acting through employees, some of whom Plaintiff has alleged (based on information received from a Google insider) have financial relationships with some of Plaintiffs' competitors, responded by removing Plaintiff's App from

_____

[2] As described in the SAC, an organic or natural search result is generated using an algorithm contained in a search engine, which ranks the located apps in order of relevance.  (SAC ¶ 17.) Alternatively, to obtain a high search result ranking, a person can purchase "keywords" from Google, which gives the listing associated with the keywords priority placement ahead of the natural search results.  See Google Inc. v. Am. Blind & Wallpaper, No. C 03-5340JF(RS), 2007 WL 1159950, at *3 (N.D. Cal. Apr. 18, 2007).

1   Google Play and suspending Plaintiff's developer account.  (SAC ¶¶ 86-94, 146-151.)  Plaintiff has

2   alleged that Google knew the complaints were false and that there was no justification for taking

3   down Plaintiff's App and suspending its account.  (SAC ¶¶ 90-94.) These actions by Google caused

4   Plaintiff to suffer losses of tens of thousands of dollars per month.  (SAC ¶¶ 53-54, 61.)

5           Plaintiff's online appeal of its suspension fell on deaf ears.  (SAC ¶¶ 95-98.)  When Plaintiff

6   was finally able to speak to a live person at Google (which was accomplished only by filing an earlier

7   federal lawsuit), Google conceded that Plaintiff's App was not spyware and that none of its functions

8   or features warranted its removal from Google Play or the suspension of Plaintiff's developer

9   account.  (SAC ¶¶ 99-101.)  As a condition of reinstatement, however, Google informed Plaintiff

10  that it could not market Plaintiff's App under a name that contained the word "spy," because,

11  according to Google, the word "spy" is "misleading" because it falsely "represent[s] the product as

12  being spyware and/or capable of surreptitious tracking."  This condition imposed by Google

13  precluded Plaintiff from using its federally registered mark to identify Plaintiff's App.  (SAC ¶¶ 102-

14
    105.)
15

16          While Plaintiff had no choice in being forced to accept this condition, Google continued to

17  allow other competing app developers to market their apps – including parental monitoring apps that

18
    competed directly with Plaintiff's App – using the word "spy" in the name, including names that
19
    copied Plaintiff's mark.  (SAC ¶¶ 105-107, 114-119.)  Plaintiff has alleged that Google had actual
20
    and/or constructive knowledge of apps that infringed on Plaintiff's mark, but either took no action or
21
    allowed the infringement to continue for weeks until any action was taken.  (SAC ¶¶ 184-186.)
22
    Among the evidence described in the SAC to support Plaintiff's claim that Google was aware of
23
    others' infringement on Plaintiff mark is an unsolicited letter that Plaintiff received from someone
24
    who identified him/herself as a Google employee, who unequivocally confirmed that Google's
25
    employees, because of a financial relationship between the employees and the developers, allowed
26
27  Plaintiff's competitors to continue to offer their apps on Google Play despite full knowledge that
28

1   these developers were infringing on Plaintiff's mark, and that there was no justification to remove

2   Plaintiff's App from Google Play or to prevent Plaintiff from using its trademark.  (SAC ¶¶ 146-151

3   and Exhibit 4.)

4           The full breadth of Google's plan and its motivation to act as it has against Plaintiff has just

5   recently come into focus and, these recent revelations form the basis for Plaintiff's simultaneously

6   filed request for leave to supplement its SAC.[3]  Starting in May 2016, Google began selling the

7   keywords "spy phone" to the highest bidder.  What this means is that when a consumer inputs the

8   search term SPY PHONE® into the search bar on Google Play, the app listing associated with the

9   high-bidder (almost always a direct competitor of Plaintiff's) will appear first on the search result

10  screen ahead of all other apps that match the search term "spy phone."  (See Parisi Decl. Exh. 1.)  In

11  other words, while Google has prevented Plaintiff from using its trademark to obtain an organic top-

12  ranking because, in Google's own words, an app with the word "spy" in the title is "misleading"

13  because it implies that the app is "spyware and/or capable of surreptitious tracking" (SAC ¶ 102),

14  Google is now selling keywords that are Plaintiff's mark to developers who wish to achieve a top-

15  ranking.  Not only does this constitute unfair competition by Google, which is the subject a new

16  

17  cause of action that Plaintiff seeks to add via its motion to supplement, but, as relevant to this motion,

18  it demonstrates Google's bad faith and abuse in enforcing the DDA and its Developer Program

19  

20  Policies.

21          For the reasons described below, Google's conduct, as summarized above and detailed in the

22  SAC, are sufficient to impose liability for contributory trademark infringement, tortious interference

23  

24  with contract, breach of the covenant of good faith and fair dealing, tortious interference with

25  prospective economic advantage and under California Business & Professions Code § 17200

26  (California's "Unfair Competition Law" or "UCL").

27  _____

28  [3] The Court is respectfully referred to the accompanying declaration of Dan Parisi, dated July 14, 2016 ("Parisi Decl.") for a statement of the facts that relate to this motion.

II. **PROCEDURAL HISTORY**

This action was initially filed in the U.S. District Court for the District of New Jersey.  Google moved to transfer the action to this Court pursuant to 28 U.S.C. § 1404 based on a forum selection clause in Google's DDA or, in the alternative, to dismiss the second and third causes of action in the AC for failure to state a claim.  On August 13, 2015, the New Jersey District Court granted the part of the motion requesting the transfer without ruling on Google's motion to dismiss.  Upon transfer, this action was assigned to Magistrate Paul S. Grewal and Google renewed its motion to dismiss the AC.  Magistrate Grewal, in an Order dated March 21, 2016 ("Order") granted Google's motion to dismiss, but also granted Plaintiff leave to file its SAC.  Plaintiff filed its SAC on April 11, 2016.  Google moved to dismiss the SAC on May 25, 2016.

III. **ARGUMENT**

    A.    THE SAC STATES A CLAIM AGAINST GOOGLE FOR
              CONTRIBUTORY TRADEMARK INFRINGEMENT

One who continues to supply its services to known trademark infringers can be held liable for contributory trademark infringement under the Lanham Act.  Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 658 F.3d 936, 942 (9th Cir. 2011); Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 106 (2d Cir. 2010); Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 984 (9th Cir. 1999).  To state such a claim, the plaintiff must allege facts that, if proven, would establish, inter alia, that the defendant continued to provide services with actual knowledge of trademark infringement or with "willful blindness" to the infringement, i.e., the defendant looked the other way despite "reason to suspect that users of its service are infringing a protected mark."  Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc., No. CV 10-03738 AB (CWX), 2015 WL 5311085, at *34 (C.D. Cal. Sept. 10, 2015) (quoting Tiffany, 600 F. 3d at 109-110; accord, Philip Morris USA Inc. v. Liu, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007) ("Willfulness can be established by evidence of knowing conduct or by evidence that the defendant acted with 'an aura of indifference to plaintiff's

1   rights'"); <u>Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.</u>, 955 F.2d 1143, 1149 (7th Cir.

2   1992) ("willful blindness is equivalent to actual knowledge for purposes of the Lanham Act").

3          In dismissing the AC with leave to amend, Magistrate Grewal found that Plaintiff had not

4   alleged facts that, if proven, would establish that Google had actual notice of infringement by others

5   on Plaintiff's mark.  (Order at 7-8.)[4]  Google's characterizes Plaintiff's amended trademark claim in

6   the SAC as "unchanged" from the version that appeared in the AC.  (Google's Memo of Points and

7   Authorities ("Mov. Br.") at 3.)  For the following reasons, Google is wrong and its motion should be

8   denied.

9          First, the SAC clarifies that Plaintiff's claim for contributory infringement rests not just on

10  Google's failure to act, but on Google's failure to act promptly to suspend its services to known

11  infringers of Plaintiff's mark.  Google seems to suggest that it can avoid liability for contributory

12  trademark infringement simply because it did not ignore any specific trademark complaint,

13  irrespective of the timing or nature of Google's response.  (Mov. Br. at 3-6.)[5]  There is no legal

14  authority that grants Google such leeway to avoid liability.  Just like the owner of a flea market who

15  receives a complaint about a vendor selling counterfeit designer handbags but allows these unlawful

16  sales to continue for weeks before shutting the vendor down, Plaintiff seeks to hold Google liable

17  not just for failing to act, but for continuing to supply services to known infringers for extended

18  periods of time after receiving specific complaints.  <u>Cf.</u>, <u>Religious Tech. Ctr. v. Netcom On-Line</u>

19  <u>Commc'n Servs., Inc.</u>, 907 F. Supp. 1361, 1375 (N.D. Cal. 1995) (provider of electronic bulletin

---

[4] Although Magistrate Grewal observed that a service provider could be held liable for contributory trademark infringement if it supplies services with "reason to know" of trademark infringement by others (Order at 7), the Order did not contain any discussion of why the Court did not accept the allegations in the AC that Google was "willfully blind" to ongoing infringement, and instead concluded that the AC only alleged "generalized knowledge" of infringement.  (<u>Id.</u>)

[5] <u>E.g.</u>, Mov. Br. at 3 ("Absent inaction in the face of [ ] express notice, internet marketplaces are not liable for contributory trademark infringement"); Mov. Br. at 4 ("Google did not ignore any specific trademark complaint submitted by [Plaintiff] . . ." ).

1  board service may be liable for contributory copyright infringement if it is shown that it could take

2  simple measures to prevent further damage to plaintiffs' copyrighted works, but instead continued to

3  allow infringing posts for an extended time after receiving notice of infringement).

4      Plaintiff's theory is amply supported by <u>Tiffany</u>, a decision on which Google heavily relies.

5  (Mov. Br. at 3, 4.)  In <u>Tiffany</u>, the Second Circuit affirmed the district court's holding that eBay

6  could not be held liable for contributory infringement by relying, in part, on undisputed evidence

7  showing the eBay "**promptly** removed all listings that Tiffany challenged as counterfeit," 600 F.3d

8  at 106 (emphasis added), with most removals having occurred within 12 hours of a complaint being

9  received and the remainder removed within 24 hours.  <u>Id.</u> at 99.[6]  A similar result was reached in

10  <u>Acad. of Motion Picture Arts & Scis.</u>, where the district court, in dismissing a claim for contributory

11  trademark infringement against GoDaddy, cited the presence of "a robust Trademark Protection

12  Policy, which included a VIP program for brandowners with frequent concerns of potential

13  infringement" that resulted in all trademark complaints being resolved within an average of 2.75 days

14  from receipt of the complaint, and most being resolved within one business day.  2015 WL 5311085,

15

16  at *10, *31 .  <u>Cf.</u>, 17 U.S.C. § 512(c) & (d) (providing safe harbor under DMCA for an online service

17  provider that "acts expeditiously to remove" the infringing material"); <u>Wolk v. Kodak Imaging

18  Network, Inc.</u>, 840 F. Supp. 2d 724, 733 (S.D.N.Y. 2012) (photo storage service qualified for DMCA

19

20  safe-harbor protection where it removed the alleged infringing images on the same day notice was

21  received), <u>aff'd</u>, 569 F. App'x 51 (2d Cir. 2014).

22

23

24

25  _____

26  [6] While <u>Tiffany</u> is illuminating on some of the legal issues raised here, it must be remember that
<u>Tiffany</u> was decided following both full discovery and a bench trial, during which evidence of what
eBay's employees knew and did not know was explored extensively.  It should not and cannot be
27  assumed that Google's conduct here was as vigilant as eBay's conduct in <u>Tiffany</u>.  <u>See Rosetta Stone,
Ltd. v. Google, Inc.</u>, 676 F.3d 144, 164 (4th Cir. 2012) (criticizing the district court's "heavy
28  reliance" on <u>Tiffany</u> in deciding a motion for summary judgment because <u>Tiffany</u> was decided on
appeal following a "lengthy bench trial").

1    In sharp contrast to the prompt action taken to address infringement complaints by the online

2    service providers described above, the SAC alleges that Google typically took weeks to respond to

3    Plaintiff's infringement complaints.  In arguing that the SAC is "unchanged" from the AC, Google

4    ignores these new allegations in the SAC describing how Google received actual notice of

5    infringement via an online complaint form, but continued to allow these infringing apps to remain

6    on Google Play for extended periods of time.  Although the full scope of this conduct can only be

7    revealed through discovery, the SAC identifies two specific instances of unexplained and unjustified

8    delays by Google in taking any action against known infringers:  (1) after Plaintiff submitted a

9    trademark complaint using Google's standard complaint form on May 17, 2013, it took 27 days for

10   the Google Play Team to remove the infringing app (SAC ¶ 76); and (2) after Plaintiff identified an

11   infringing app in its AC on January 23, 2015, Google did not remove that app until 18 days later

12   (SAC ¶ 155).  In the time between these notices and Google's takedowns, Google "continue[d] to

13   supply its [services] to one whom it knows or has reason to know is engaging in trademark

14   infringement."  Tiffany, 600 F.3d at 106 (Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 854

15   (1982)).  The fact that Google may have eventually removed these and other infringing apps from

16   Google Play does not, by itself, entitled Google to dismissal of the contributory infringement claim.

17   Spy Optic, Inc. v. Alibaba.Com, Inc., No. CV1500659BROJCX, 2015 WL 7303763, at *6 (C.D. Cal.

18   Sept. 28, 2015) (denying motion to dismiss cause of action for contributory trademark infringement

19   because, while defendant had shut down many infringing vendors in response to trademark

20   complaints, "on at least one occasion, defendant has allowed an infringer, . . . to continue to use its

21   websites to post multiple infringing products, even after Plaintiff alerted Defendant" about the

22   infringement).  At a minimum, Plaintiff should be permitted to explore why it took Google so long

23   to act on these specific infringement complaints (as well as others likely to be identified in discovery)

24   and have the Court or a jury decide whether Google's conduct is culpable.

The new allegations in the SAC also clarify why Google's failure to take down Reptilicus.net Brutal Spy Phone creates a separate basis for holding Google liable for contributory trademark infringement.  (SAC  ¶¶ 84-85.)  As described in the SAC, during the period from approximately November 2012 – June 24, 2013, Google eventually responded to Plaintiff's trademark complaint and removed all apps with titles that contained Plaintiff's SPY PHONE® mark.  (SAC ¶¶ 68-71, 75-77.)  On June 24, 2013, Plaintiff submitted a trademark infringement complaint directed at an app marketed under the name Reptilicus.net Brutal Spy Phone.  (SAC ¶¶ 84.)  Although the Google Play Team had previously taken down apps with similarly infringing names – such "Galyum Spy Phone" – on this occasion, which incurred within days of Plaintiff's initial interaction with defendant Ciuca and the date that Google began taking unjustified punitive action against Plaintiff, Google informed Plaintiff that it would take no action:

> As a preliminary matter, please note that Google is not in a position to mediate trademark disputes between developers and trademark owners. As a courtesy we have considered your claim, but are unable to determine its merits at this time.

(SAC ¶ 85.)

In moving to dismiss the SAC, Google renews the argument made in support of its motion to dismiss the AC, and seemingly accepted by Magistrate Grewal, that the mere fact that Google responded to the complaint, regardless of the outcome or any ulterior motivation, is sufficient for Google to avoid liability for contributory trademark infringement.  (Mov. Br. at 3-5.)[7]  But none of

---

[7] In concluding that Google had not done anything to warrant imposing liability for its failure to remove Reptilicus.net Brutal Spy Phone from Google Play, Magistrate Grewal found that it was enough that "Google did not ignore that notification," and "investigated and responded that it could not assess the merits of the claim." (Order at 8.)  In reaching this result, Magistrate Grewal accepted an explanation contained in a footnote in Google's memo of law in support of its motion to dismiss the AC (and renewed here at Mov. Br. at 3 & 5 n.3) that Google was "uncertain" whether the developer of Reptilicus.net Brutal Spy Phone was infringing on Plaintiff's mark are merely intended to use the mark as a "descriptor," and blamed Plaintiff for not following up to provide additional information.  (Order at 8.)  Notably, the notice Google sent to Plaintiff in June 2013 when it refused to act did not mention any "uncertainty" or "confusion," nor did it request additional information from Plaintiff.  (SAC ¶ 85.)

(Continued...)

the authorities cited by Google support the notion that an online service provider can avoid liability for contributory infringement simply by responding to a notice of infringement, particularly where that response is inadequate, inconsistent with earlier responses and Plaintiff's SAC includes specific allegations plausibly suggesting why Google's response was different than before.  (See SAC ¶¶ 68-94, 145-151.)  If Google's view is accepted, then all a defendant needs to do to avoid liability is acknowledge receipt of a complaint and advise that nothing could be done, the law of contributory trademark infringement would have no teeth.[8]

Another argument advanced by Google that is dispelled by the changes that appear in the SAC is Google's contention that Plaintiff's "failure to provide notice to Google of the allegedly infringing apps" is fatal to its claim for contributory infringement.  (Mov. Br. at 4-5.)  To the contrary, it is sufficient for the SAC to allege that Google was willfully blind to ongoing infringement, i.e., that Google had "reason to suspect that users of its service [were] infringing a protected mark," but looked the other way.   Acad. of Motion Picture Arts & Scis., 2015 WL 5311085 at *34; accord Tiffany, 600 F. 3d at 109-110.  The allegations in the SAC go far beyond what Google has characterized as "generalized knowledge" of infringement.  (Mov. Br. at 4.)  Rather, the SAC alleges many new and additional facts the render plausible Plaintiff's contention that, even in the absence of

---

[8] In downplaying the significance of Google's failure to take down Reptilicus.net Brutal Spy Phone, both Google and Magistrate Grewal relied on Lockheed Martin Corp. v. Network Sols., Inc., 985 F. Supp. 949, 963 (C.D. Cal. 1997), aff'd, 194 F.3d 980 (9th Cir. 1999) for the proposition that "[t]he mere assertion by a trademark owner that a domain name infringes its mark is not sufficient to impute knowledge of infringement."  (Mov. Br. at 3, citing Order at 8 n.61.)  That quotation is clearly inapplicable here, however.  In Lockheed case, the district court held that merely registering a domain name that matched a trademark is not necessarily infringement.  The court went on the explain that "to be infringing, such use must be in connection with goods or services that are competitive with, or at least related to, the goods or services for which the trademark has been registered or used in commerce" and [t]he use must also cause a likelihood of confusion as to origin or sponsorship" based on such factors strength of the mark, the proximity of the goods, the similarity of the marks, marketing channels used and the type of goods. 985 F. Supp. at 963 (citations omitted).  Here, the developer of Reptilicus.net Brutal Spy Phone was using Plaintiff's mark in connection with a directly competing product in the exact same channel of trade.

(Continued...)

a specific notice of infringement directed towards a particular app, Google had reason to know about (but was willfully blind to) the massive infringement of Plaintiff's mark by other app developers on Google Play.  For example, the SAC alleges that: (1) Plaintiff filed numerous trademark complaints with Google utilizing Google's online complaint form, placing the Google Play Team on notice of both Plaintiff's mark and Plaintiff's objection to use of the SPY PHONE® mark by others (SAC ¶¶ 68-69);[9] (2) the same employee or small group of employees on the Google Play Team were responsible for handling all of the online complaints relating to Plaintiff's App and, therefore, regardless of whether Plaintiff submitted a trademark complaint or a spyware complaint[10] directed towards a particular app, Google was made aware of apps that infringed on Plaintiff's mark by using SPY PHONE® in their names (SAC ¶¶ 30, 70, 119, 125); (3) since at least January 2015, each new app offered for listing in Google Play has been subject to a "human review" to ensure compliance with Google Play's Developer Program Policies, which means that Google knew the names of all infringing apps before they were listed on Google Play (SAC ¶ 30); and (4) Google regularly and routinely conducted independent monitoring of the apps listed on Google Play to ensure compliance with the DDA and Google Play's Developer Program Policies and, through those efforts, was aware of the apps that infringed on Plaintiff's mark (SAC ¶ 28).  These allegations plausibly suggest that

---

[9] See Evans v. Hewlett-Packard Co., No. C 13-02477 WHA, 2013 WL 4426359, at *2 (N.D. Cal. Aug. 15, 2013) (denying motion to dismiss where the allegations in the complaint were sufficient to permit an inference that defendants knew, or could have reasonably deduced that the owner of the mark did not consent to use by others).

[10] As described in the SAC, filing a trademark complaint using Google's online trademark complaint results in Google sending a notice identifying the complaining party to the infringer, which is how Ciuca and other developers were able to identify Plaintiff as the complaining party.  (SAC ¶ 67, 78-82.)  Preferring to remain anonymous, Plaintiff started sending complaints to Google about infringing apps asserting that these apps violated Google's prohibition against "spyware" (a program that could be used to view data on a mobile phone without the owner's knowledge), which does not trigger a notice identifying the complainant.  (Id. ¶¶ 119, 125.)  Google argues that Plaintiff's decision to stop sending infringement complaints and start sending spyware complaints is fatal to Plaintiff's assertion that Google had knowledge of trademark infringement.  (Mov. Br. at 5-6.)  But if, as Plaintiff alleges, investigation of and responses to complaints was done by the same employee or a small group of employees who were aware of Plaintiff's mark (SAC ¶ 70), the form of complaint providing actual notice to Google is not pertinent and the result should be the same.

Case No. 5:15-CV-03756-KAW

1    Google was specifically aware of both Plaintiff's mark and that other developers were infringing on

2    Plaintiff's mark, even in the absence of an explicit complaint about a particular app.

3         The allegations in the SAC go even further by alleging a motive for members of the Google

4    Play Team to have turned a blind eye to instances of trademark infringement by other developers.

5    As described in the SAC, Plaintiff alleges that members of the Google Play Team had a financial

6    incentive to assist defendant Ciuca and other developers by removing Plaintiff's App from Google

7    Play and terminating Plaintiff's developer account in retaliation for Plaintiff having filed trademark

8    complaints.  (SAC ¶¶ 86-94.)  The plausibility of these allegations is further bolstered by the letter

9    that Plaintiff received from someone identifying him/herself as a Google employee with first-hand

10   knowledge of Plaintiff's history of complaints and subsequent suspensions, and who confirmed

11   Plaintiff's belief that  members of the Google Play Team were fully aware that Plaintiff's mark was

12   being infringed and, to further their own financial interests, continued to allow those infringing

13   developers to post infringing apps on Google Play.  (SAC ¶¶ 146-151 & Exhibit 4.)[11]  Although

14   Google suggests that this letter need not be accepted as true because its author and provenance are

15   not explicitly alleged (Mov. Br. at 2), at this stage of the case, the contents of the letter must be

16   accepted as true.  Talada v. City of Martinez, Cal., No. C 08-02771 WHA, 2009 WL 382758, at *8

17   (N.D. Cal. Feb. 12, 2009) (plaintiff's allegations as to provenance of anonymous letters must be

18   accepted as true on a motion to dismiss).

19

20

21        Simply put, given the extensive allegations in the SAC that plausibly support Plaintiff's

22   contention that Google had knowledge of ongoing infringement by developers that Google continued

23   to allow to operate on Google Play, Google's motion should be denied and Plaintiff should be

24   permitted to take discovery to prove the allegations in the SAC.  Gray v. BMW of North America,

25

26

27   _____

28   [11] This letter, although not attached to the AC, is now included as Exhibit 4 to the SAC.

LLC, No. 13–cv–3417 (WJM)(MF), 2014 WL 4723161 at *3 (D.N.J. Sep. 23, 2014) (questions concerning defendant's knowledge "are properly to be determined through discovery, not on a motion to dismiss").

### B.  THE SAC STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

With respect to Plaintiff's claim for tortious interference against Google for interfering with Plaintiff's AdSense® contract, Plaintiff acknowledges the cases cited by Google which hold that a party to a contract cannot be held liable for interfering with its own contract.  (Mov. Br. at 6.)  That rule, however, should not be mechanically applied here because Plaintiff has alleged that Google's AdSense® program is operated by a business unit that is distinct and independent from the one that employs the financially self-interested members of the Google Play Team who are alleged to have interfered with the AdSense® contract.  (SAC ¶ 56.)  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 513-14 (1994) ("'a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract.'" quoting Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990)).

### C.  THE SAC STATES A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IN THE DDA

As Google acknowledges (Mov. Br. at 7), "every contract contains an implied covenant of good faith and fair dealing."  Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 477 (1992).  "A 'breach of a specific provision of the contract is not a necessary prerequisite' to a breach of an implied covenant of good faith and fair dealing."   Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999) (quoting Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc., 2 Cal. 4th 342, 372 (1992)).

Seeking dismissal of Plaintiff's claim for breach of the implied duty of good faith and fair dealing in the DDA, Google contends that the SAC does not allege facts upon which Google can be

1   held liable because the actions taken by Google in removing Plaintiff's App and terminating its

2   developer account fall within the scope of its "broad discretionary power to police its own website

3   and to remove material that 'violates Google's hosting policies and other terms of service.'"  (Mov.

4   Br at 7.)  However, even "when a contract gives one party a discretionary power affecting the rights

5   of the other, that party must exercise its discretion in good faith and in accordance with fair dealing."

6   Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp., 221 Cal. App. 4th 867, 882 (2d Dist.

7   2013); accord Carma Developers, 2 Cal. 4th at 372  ("The covenant of good faith finds particular

8   application in situations where one party is invested with a discretionary power affecting the rights

9   of another. Such power must be exercised in good faith").  Whether a party has acted in good faith

10  is a question of fact.  Peak-Las Positas Partners v. Bollag, 172 Cal. App. 4th 101, 106 (2nd Dist. 2009)

11

12  (citing Kendall v. Ernest Pestana, Inc., 40 Cal. 3d 488 (1985)).

13          While Plaintiff does not dispute that Google retained the right under the DDA to determine

14  whether an app violates one or more of its Developer Program Policies or some other term of service

15  (Mov. Br. at 7), as reflected in the authorities cited above, Google must exercise that discretion in

16  good faith.  In other words, absent explicit contractual authority, Google cannot remove an app for

17  no reason simply to advance its own agenda (or the agenda of its employees or another developer).

18

19  Daly v. United Healthcare Ins. Co., No. 10-CV-03032-LHK, 2010 WL 4510911, at *6 (N.D. Cal.

20  Nov. 1, 2010) (even though defendant retained right to terminate plaintiff, plaintiff stated claim for

21  breach of implied covenant of good faith and fair dealing by alleging defendant did not investigate

22  basis for termination and that termination was solely to avoid paying commissions).  The SAC

23  contains many detailed allegations that, if proven, would establish that Google's removal of

24  Plaintiff's App from Google Play and the suspension its developer account was unjustified, done in

25  bad faith and constituted an abuse of discretion.  Most notably, the letter Plaintiff received from a

26  Google insider explicitly states that the takedown of Plaintiff's App and the suspension of Plaintiff's

27

28  developer account were entirely illegitimate, and the only reason that Plaintiff's account was

reinstated was that that "there was no real justification to get rid of [Plaintiff]." (SAC ¶ 147, Exhibit 4.) In addition, the SAC alleges that after Plaintiff's App was removed from Google Play in 2013 because of a purported determination that it violated Google's prohibition against "spyware," Plaintiff's App was reinstated without any change to its features and functionality, which further supports Plaintiff's allegations that there was nothing wrong with it in the first place. (SAC ¶ 101)[12] Despite the fact that Google eventually acknowledged that the original takedown was unjustified, Google refused to restore the prior consumer reviews and download statistics for Plaintiff's App, which contributed to its high search term ranking. (SAC ¶ 108.) The same thing happened again in 2014, when Plaintiff's App was unjustifiably removed from Google Play based on a false complaint that it violated Google's "anti-spam" policy. (SAC ¶¶ 131-136.) The SAC further alleges that Google's so-called policy of prohibiting developers from using the word "spy" in the title of an app listed on Google Play, which precluded Plaintiff from using its trademark anywhere in the world, was abusive because it applied only to Plaintiff, (SAC ¶¶ 114, 124), a fact confirmed by the letter from the Google insider (SAC ¶ 147, Exhibit 4) and the continued presence of dozens of other apps that contain the word "spy" in its name. (SAC ¶¶ 116-118.) Each of these allegations, individually and in their totality, plausibly establish that Google has breached its duty to exercise the discretion granted to it under the DDA in good faith, and Plaintiff should be entitled to test those allegations in discovery.

Notably, while Google's asserts that "[c]ourts cannot imply the covenant of good faith and fair dealing if it conflicts with the a contract's express grant of discretionary power" (Mov. Br. at 6), Google has not identified any express provision in the DDA that conflicts with Google's implied duty to act in good faith in applying its Developer Program Policies. Section 7.2 of the DDA, which

---

[12] "After numerous back-and-forth communications between Plaintiff's counsel and Google's in-house lawyer, the Google Play Team finally acknowledged that none of the functions or features of Plaintiff's App violated Google's extant anti-spyware policy or any of Google's other Developer Program Policies." (SAC ¶ 101.)

is the only section of the DDA referenced by Google (Mov. Br. at 7), is precisely the type of clause as to which California courts have held the implied duty of good faith to apply since it vests Google with discretion on how and when an app can be removed from Google Play.

### D.   PLAINTIFF HAS STATED A CLAIM UNDER CALIFORNIA'S UCL

The SAC also states a claim for violation of the UCL, found in California Business & Professions Code § 17200.  The UCL prohibits, inter alia, any "unfair ... business act or practice."  "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices."  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003) (citing Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 180 (1999)).  In other words, as observed by Magistrate Grewal in granting Plaintiff leave to amend, to state a claim under the UCL, a plaintiff must allege "an independently wrongful act." (Order at 9; see also Mov. Br. at 8.)

Plaintiff has met this requirement here.  As stated immediately above, the SAC states a claim against Google for breach of the implied covenant of good faith, which courts have repeatedly held may be used "as a predicate for § 17200 liability." Cortez v. Glob. Ground Support, LLC, No. 09-4138 SC, 2009 WL 4282076, at *2 (N.D. Cal. Nov. 25, 2009) (citing Gabana Gulf Distribution, Ltd. v. GAP Int'l Sales, Inc., No. C 06-02584 CRB, 2008 WL 111223, at *10 (N.D. Cal. Jan. 9, 2008)). As described at pp. 5-11, the SAC also states a claim for contributory trademark infringement under the Lanham Act, which can also be used as a predicate for UCL liability.  Ferrington v. McAfee, Inc., No. 10-CV-01455-LHK, 2010 WL 3910169, at *14-15 (N.D. Cal. Oct. 5, 2010).

### E.   PLAINTIFF HAS STATED A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.

In addition to alleging the elements of a cause of action for interference with prospective economic advantage (see Mov. Br. at 8, citing Korea Supply, 29 Cal. 4th at 1153), a plaintiff must also plead that the defendant's conduct was "wrongful by some legal measure other than the fact of

1   interference itself." Id. (citing Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393

2   (1995)).

3          Similar to claims brought under the UCL, courts within the Ninth Circuit have held that a

4   well-pled claim for breach of the covenant of good faith and fair dealing can constitute the

5   "independent wrong" required to state a claim for tortious interference with prospective economic

6   advantage.  Darnaa, LLC v. Google, Inc., No. 15-CV-03221-RMW, 2015 WL 7753406, at *7 (N.D.

7   Cal. Dec. 2, 2015) ("the requirement of "wrongful" conduct apart from the alleged interference itself

8   will be met" by alleging breach of the covenant of good faith and fair dealing; Givemepower Corp.

9   v. Pace Compumetrics, Inc., No. 07CV157 WQH RBB, 2007 WL 2345027, at *8 (S.D. Cal. Aug.

10  14, 2007) (the pleading requirement of independently wrongful conduct satisfied where plaintiff

11  adequately alleged, among other claims, breach of the implied covenant of good faith and fair

12  dealing).

13

14         Google attacks the viability of Plaintiff's tortious interference claim on two grounds, neither

15  of which has merit.  First, Google contends that the independent wrong on which Plaintiff relies –

16  breach of the covenant of good faith – is deficiently pled because Google retained the unfettered

17  discretion to do as it pleased under the DDA.  (Mov. Br. at 8-10.)  As explained above at pp. 13-16,

18  however, the implied covenant of good faith and fair dealing does not vanish simply because a

19  contract gives one party discretionary power affecting the rights of the other.  Indeed, the covenant

20  of good faith "finds particular application" in these types of situations.  Carma Developers, 2 Cal.

21  4th at  372.  While Google argues that it "did nothing more than exercise its [superior] contractual

22  rights under the DDA in taking down Plaintiff's App and suspending its developer account (Mov.

23  Br. at 9), the SAC contains specific allegations, discussed above at pp. 13-16, describing how Google

24  did not merely exercise its rights, but abused them by taking punitive action against Plaintiff without

25  justification.  Simply stated, while it is true that Google is authorized under the DDA "to take down

26  any app that Google has deemed to be spyware (Mov, Br. at 9), the SAC alleges that Plaintiff's App

27

28

1    was taken down even though it was **not** spyware, and that Google did what it did without justification

2    or a good faith belief that Plaintiff or Plaintiff's App violated any of Google's Developer Program

3    Policies (SAC ¶¶ 90-94, 114-124), allegations that are supported by letter from the Google insider

4    (SAC ¶¶ 146-151 and Exhibit 4), and the fact that Plaintiff's App was eventually reinstated without

5    any change in functionality.  (SAC ¶ 101.)  Contrary to Google's characterization, these are not

6    merely "conclusory assertions" of bad faith (Mov. Br. at 9), but specific and plausible allegations

7    that Plaintiff should be permitted to test in discovery.  Indeed, if either side has advanced allegations

8    that could be described as conclusory, it is Google, who asks this Court to accept as true its assertion

9    that Plaintiff's App was "spyware" and that it has not engaged in bad faith conduct.  But on a motion

10   to dismiss, it is Plaintiff's allegations that must be accepted as true, not the defendant's.

12        As a second prong of attack against Plaintiff's tortious interference claim, Google argues that

13   Plaintiff has not "pled any recoverable damages" because Plaintiff's App is a free download and,

14   further, the DDA precludes recovery of consequential damages and lost profits.  (Mov. Br. at 10.)

15   The SAC alleges, however, that Plaintiff has earned between 22.5¢ and 45¢ per download through

16   advertising revenue, money that Plaintiff lost as a result of Google's misconduct.  (SAC ¶¶ 53-54.)

17   As for the limitations of damages clause found in § 12 of the DDA, the allegations in the SAC are

18   sufficient to raise an issue as to whether § 12 is unconscionable and, therefore, not enforceable against

19   Plaintiff.  (See SAC ¶¶ 16, 21, 104); Rodman v. Safeway Inc., No. 11-CV-03003-JST, 2015 WL

20   5117616 at *4 (N.D. Cal. Aug. 31, 2015) ("limitation of liability clauses are enforceable unless they

21   are unconscionable, that is, the improper result of unequal bargaining power or contrary to public

22   policy," quoting Food Safety Net Servs. v. Eco Safe Sys. USA, Inc., 209 Cal. App. 4th 1118, 1126

23   (2012)); Clark v. LG Electronics U.S.A., Inc., No. 13-CV-485 JM JMA, 2013 WL 5816410 at *15

24   (S.D. Cal. Oct. 29, 2013) (contractual provision precluding recovery of consequential damages not

25   enforceable against weaker party where parties do not have equal bargaining power negotiation and

26   the weaker party has no meaningful choice); see generally, Cal. Com. Code § 2719 (West)

("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable"); Cal. Civ. Code § 1668 (West) ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his . . . violation of law, whether willful or negligent, are against the policy of the law").  Enforcement of the limitation of damages clause here would be particularly anomalous since it would effectively insulate Google, the dominant player in the market for Android® apps (SAC ¶ 16), not just from claims for consequential damages, but from liability under any circumstances, regardless of the nature of the conduct alleged.  Moreover, the DDA limitation should be interpreted to protect Google only from good faith acts taken in its own interest.

F.      SECTION 230 OF THE CDA DOES NOT IMMUNIZE GOOGLE
        FROM LIABILITY HERE

Google also argues that § 230(c)(2)(A) of the Communications Decency Act ("CDA"), codified at 47 U.S.C. 230(c)(2)(A), immunizes Google from liability for its actions as a matter of law.[13]  This argument should rejected for any or all of the following reasons:  (1) the applicability of the CDA is not ripe for determination on a Rule 12(b)(6) motion; (2) Google does not fit the definition of an interactive service provider because it contributes to the content at issue; and (3) Google cannot demonstrate, as a matter of law, that it acted in good faith.[14]

1.      CDA Immunity Cannot Be Determined on a Rule 12(b)(6) Motion

---

[13] Section 230(c)(2)(A) provides that no civil liability may be imposed against an interactive computer service for

> any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected.

[14] Magistrate Grewal's prior Order did not address the applicability of the CDA here. Plaintiff refers this Court to its prior memorandum on this issue.

As a threshold matter, this Court must decide whether CDA immunity, an affirmative defense, can even be raised on a Rule 12(b)(6) motion. e-ventures Worldwide, LLC v. Google, Inc., No. 2:14-CV-646-FTM-29CM, 2016 WL 2758889, at *5 (M.D. Fla. May 12, 2016) ("The CDA statutory immunity is an affirmative defense which plaintiff is not required to negate in its Complaint"); Perfect 10, Inc. v. Google, Inc., 2008 WL 4217837 at *8 (C.D. Cal. 2008) ("preemption under the CDA is an affirmative defense that is not proper to raise in a Rule 12(b)(6) motion."); Swift v. Zynga Game Network, Inc., No. C 09-05443 SBA, 2010 WL 4569889 at *6 (N.D. Cal. Nov. 3, 2010) (same); but see Holomaxx Technologies v. Microsoft Corp., 783 F. Supp. 2d 1097, 1103 (N.D. Cal. 2011) ("an affirmative defense properly may be considered on a Rule 12(b)(6) motion where the defense is 'apparent from the face of the [c]omplaint'"). If the Court determines that this defense cannot be considered on a pre-answer motion to dismiss, it need go no further.

## 2.  Google Is Not Entitled To CDA Immunity Because It Is a Content Provider

By its terms, the CDA precludes publisher liability against an interactive computer service for content created by "another information content provider." 47 U.S.C. § 230(c)(1). "In other words, the CDA immunizes an interactive computer service provider that 'passively displays content that is created entirely by third parties,' but not an interactive computer service provider that acts as an information content provider by creating or developing the content at issue." Sikhs for Justice "SFJ", Inc. v. Facebook, Inc., 144 F. Supp. 3d 1088, 1093-94 (N.D. Cal. 2015) (quoting Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008)); accord, Batzel v. Smith, 333 F.3d 1018, 1031 (9th Cir. 2003) ("The reference to 'another information content provider'... distinguishes the circumstance in which the interactive computer service itself meets the definition of 'information content provider' with respect to the information in question [emphasis in original]").

The SAC alleges that "[b]efore an app can be listed on Google Play, the developer must incorporate source code provided by Google that enables the apps to access and interact with a

phone's Android® operating system." (SAC ¶ 33.) Since it provides a portion of the content for all apps listed on Google Play, Google does not fit the definition of an interactive computer service and cannot rely on CDA § 230 to avoid liability.  Opperman v. Path, Inc., 84 F. Supp. 3d 962, 987 (N.D. Cal. 2015) (denying Apple's motion to dismiss based on assertion of CDA immunity where the complaint alleged that all apps listed in Apple's App Store "were built, in part, by Apple" because "Apple controlled the development of Apps provided by its App Store, and contributed to the creation of the offensive content, for example, by using its iOS Human Interface Guidelines to instruct App developers to access address book data without prior permission").

Google's contention that "numerous courts have held that Google Play and other Google online platforms are interactive computer services under the CDA" (Mov. Br. at 12) is misleading, since none of the cases cited by Google (Mov. Br. at 12) address the question of whether Google Play fits the definition of an interactive computer service under the CDA.   Svenson v. Google Inc., 65 F. Supp. 3d 717, 726 (N.D. Cal. 2014) (examining whether Google's electronic payment service violates the Stored Communications Act); In re Google, Inc. Privacy Policy Litig., No. C-12-01382-PSG, 2013 WL 6248499, at *12 (N.D. Cal. Dec. 3, 2013) (examining whether Google services constitute "a wire or electronic communications service" as defined under the Stored Communications Act); Parker v. Google, Inc., 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006), aff'd, 242 F. App'x 833 (3d Cir. 2007) (examining whether Google's USENET system qualifies for CDA immunity); Jurin v. Google Inc., 695 F. Supp. 2d 1117, 1119 (E.D. Cal. 2010) (examining whether Google's search engine qualifies for CDA immunity); Mmubango v. Google, Inc., No. CIV.A. 12-1300, 2013 WL 664231, at *1 (E.D. Pa. Feb. 22, 2013) (same).  At a minimum, the allegations describing the extent of Google's involvement in contributing to the apps posted on Google Play raise an issue that cannot be decided on a motion to dismiss. CYBERsitter, LLC v. Google Inc., 905 F. Supp. 2d 1080, 1086 (C.D. Cal. 2012) (Because [Google's] entitlement to immunity under the CDA depends on whether [it] "developed" or materially contributed to the content of these

1    advertisements, including those Google is being paid to provide as search results, it is too early at

2    this juncture to determine whether CDA immunity applies").

3

4                    3.    Google Cannot Establish Good Faith at This Stage of the Action

5            As Google concedes (Mov. Br. at 14-15), to obtain CDA immunity, Google must also

6    establish that it acted in "good faith" in removing Plaintiff's App from Google Play.  e-ventures

7    Worldwide, 2016 WL 2758889 at *5 (denying Google's motion to dismiss based on CDA immunity

8    where plaintiff had alleged that Google failed to act in good faith when removing its websites from

9    Google's search results).[15]  Many of the allegations in the SAC already discussed above leave Google

10   unable to demonstrate good faith as a matter of law.  For example, Plaintiff has alleged that Plaintiff's

11   App fully complied with all Google's policies and procedures and that there was no justification to

12   remove Plaintiff's App from Google Play or suspend its developer account.  (SAC ¶¶ 90-92, 134-

13   136.)  Plaintiff has also alleged that it received a letter from a Google insider confirming Plaintiff's

14   own belief that Google had "no real justification" for the adverse actions taken against Plaintiff in

15   2013 and 2014, and that such actions were taken to advance the personal interests of Google

16   employees to punish Plaintiff for submitting complaints to enforce its legitimate trademark rights.

17   (SAC at ¶ 147 and Exhibit 4.)  The SAC further alleges that Google has no actual policy against

18   using the word "spy" in the name of an app, and that Plaintiff was the only developer that Google

19   had ever prevented from using the word "spy" in the name of its app (SAC at ¶ 124), an allegation

20   that Plaintiff supports with a partial list of apps that contained the word "spy" in the name that were

21   allowed to remain listed on Google Play after Plaintiff's App had been removed.  (Id. at ¶¶ 117-119;

22   166-167.)  Plaintiff also alleges that Google and its employees orchestrated the removal of Plaintiff's

23

24

25

26   ─────────────────────

27   [15] Google asserts that Plaintiff has the burden of pleading an absence of good faith with respective to
     Google's affirmative defense of CDA immunity.  (Mov. Br. at 14.)  Although it is illogical for
28   Plaintiff to have to disprove an element of Google's defense, as described below, the SAC contains
     ample facts that would establish Google's bad faith conduct.

App from Google Play not because the content or functionality was "objectionable," but because of an ulterior financial incentive.  (Id. at ¶¶ 146-147.)   At a minimum, these allegations are sufficient to raise a legitimate issue of whether Google is entitled to CDA immunity.  Moving and Storage, Inc. v. Panayotov, No. 12–12262–GAO, 2014 WL 949830 at *2 (D. Mass. Mar. 12, 2014) (if bad faith is adequately pled, availability of CDA immunity defense "cannot be appropriately decided" on a Rule 12(b)(6) motion absent "a developed factual record").

The decision upon which Google most heavily relies in arguing that its good faith can be decided as a matter of law on a motion to dismiss is readily distinguishable.  In e360Insight, LLC v. Comcast Corp., 546 F. Supp. 2d 605 (N.D. Ill 2008) (cited in Mov. Br. at 14, 15), the plaintiff, who the court described as a "spammer," sued Comcast for failing to allow it to deliver bulk email messages through Comcast's servers.  The plaintiff alleged that Comcast had unfairly "singl[ed] out" plaintiff, and that others behaving in a like manner were treated differently.  Id. at 609.   Here, by contrast, while it is true that Plaintiff claims that has been treated differently than other developers who use are allowed to use the word "spy" in the name of their app (SAC ¶¶ 102-124), Plaintiff's Complaint goes much further.  Plaintiff alleges not only disparate treatment, but that Google's employees orchestrated the removal of Plaintiff's App from Google Play for their own personal financial gain.  (SAC ¶¶146-151.)  See also Smith v. Trusted Universal Standards in Electronic Transactions, Inc., Civ. No. 09–4567, 2010 WL 1799456 at * 7 (D.N.J. May 4, 2010) (allegation that defendant blocked email for financial motive, namely to encourage plaintiff to upgrade his service plan, satisfies the requirement of pleading bad faith).   In addition, while the district court in e360Insight found that "a mistaken choice to block [the plaintiff's emails], if made in good faith, cannot be the basis for liability" in light of the immunity afforded by § 230, e360Insight, 546 F. Supp. 2d at 609, Plaintiff here does not just allege that Google made a mistake.  Rather, Plaintiff asserts that Google knew, directly or through its employees, that "there was no real justification" for

removing Plaintiff's App from Google Play and/or suspending Plaintiff's developer account, but did these anyway.  (SAC ¶¶ 94, 147, 151 and Exhibit 4.)  This is the very definition of bad faith behavior.

**IV.    CONCLUSION**

For the foregoing reasons, Google's motion should be denied in all respects and the action should proceed to discovery.

Dated: July 15, 2016                                    RIMON P.C.

                                                        By: ____/S/  Neil  A. Smith
                                                              Neil A. Smith


                                                        GREENBERG FREEMAN LLP

                                                        By: ___/S/  Michael A. Freeman
                                                              Michael A. Freeman (*pro hac vice*)

                                                        Attorneys for the Plaintiff
                                                        SPY PHONE LABS LLC

1

2

CERTIFICATE OF SERVICE

3

I, Neil A. Smith, hereby certify that on July 15, 2016 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

4

5

/s/ Neil A. Smith

6

NEIL A. SMITH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:15-CV-03756-KAW

OPPOSITION TO MOTION TO DISMISS