UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPY PHONE LABS LLC., | Case No.  15-cv-03756-KAW |
| Plaintiff, | |
| | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO SUPPLEMENT** |
| v. | |
| GOOGLE INC., et al., | |
| Defendants. | Re: Dkt. Nos. 56, 64 |

Plaintiff Spy Phone Labs LLC brings this suit against Defendants Google Inc. and Andrei Ciuca, alleging violations of the Lanham Act for trademark infringement and various common law claims.  (Second Amended Compl., "SAC," Dkt. No. 53.)  Pending before the Court are Google's motion to dismiss the second amended complaint and Plaintiff's motion to supplement the second amended complaint.  (Def.'s Mot. to Dismiss, Dkt. No. 54; Plf.'s Mot. to Supp., Dkt. No. 64.)  Upon consideration of the moving and responding papers, as well as the arguments presented at the October 6, 2016 motion hearing, and for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Google's motion to dismiss and DENIES Plaintiff's motion to supplement.

## I.   BACKGROUND

Plaintiff is the owner of the registered U.S. trademark, "Spy Phone."  (SAC ¶ 37.)  Plaintiff developed a monitoring software application ("app"), which allows a user or authorized third party to monitor or track a user's cell phone activity, such as the location of the phone, the contact information of the sender or recipient of incoming and outgoing messages, and the content of messages.  (SAC ¶¶ 41-43.)  Plaintiff offers its app on Google's Play Store, an online marketplace for smart phones using the Android operating system.  (SAC ¶¶ 13, 57, 62.)  Users download

United States District Court
Northern District of California

Plaintiff's app for free and access information transmitted from the cell phone on Plaintiff's website, "spyphone.com." (SAC ¶¶ 45, 49.) Plaintiff generates revenue through advertisements placed on its website by advertisers through Google's "AdSense" program. (SAC ¶¶ 49, 50.) The amount an advertiser is willing to pay for an advertisement is based on the number of people who may view the advertisement, such that the more people visited Plaintiff's website, the more advertisers were willing to pay to advertise on Plaintiff's website, generating more revenue for Plaintiff. (SAC ¶¶ 51, 52.)

Starting in 2012, Plaintiff listed its app on Google Play under the name "Spy Phone." (SAC ¶¶ 57, 60.) Between August 2012 and June 2013, Plaintiff's app was downloaded over 1.1 million times. (SAC ¶ 62.) This led to increased traffic at Plaintiff's website, which in turn led to increased advertising revenue for Plaintiff from ads placed on its website. (SAC ¶ 63.)

Between November 2012 and May 2013, Plaintiff discovered other monitoring apps that used or incorporated the "Spy Phone" trademark. (SAC ¶¶ 68, 71.) Plaintiff would submit trademark infringement complaints to the Google Play Team, after which Google would remove such apps. (SAC ¶¶ 69, 71.)

In May 2013, Plaintiff submitted a trademark infringement complaint about the monitoring app "Spy Phone App." (SAC ¶ 75.) Google did not respond until June 13, 2013, 27 days later, when it removed the app. (SAC ¶¶ 76, 77.) That same day, Plaintiff received an e-mail from Ciuca, the developer of "Spy Phone App," complaining of the removal resulting from Plaintiff's complaint. (SAC ¶¶ 79, 80.) Plaintiff responded that Ciuca's app name infringed on Plaintiff's trademark, and that Ciuca needed to use a different name. (SAC ¶ 81.)

Following this exchange, Plaintiff alleges that Google began retaliating against Plaintiff, taking actions orchestrated by Ciuca and the Google Play Team. (SAC ¶ 83.) On June 24, 2013, Plaintiff submitted a trademark infringement complaint regarding the "Reptilicus.net Brutal Spy Phone" app. (SAC ¶ 84.) Instead of taking down the app, Google took no action, instead informing Plaintiff: "Google is not in a position to mediate trademark disputes between developers and trademark owners. As a courtesy we have considered your claim, but are unable to determine its merits at this time." (SAC ¶ 85.) On June 28, 2013, Google informed Plaintiff that it had

1   removed Plaintiff's app and terminated Plaintiff's developer account in response to a complaint.

2   (SAC ¶ 86.)  Google further explained that Plaintiff's app violated Google's anti-spyware policy,

3   even though Plaintiff alleges its app was in full compliance with Google's Developer Distribution

4   Agreement ("DDA").  (SAC ¶¶ 87, 90, 91.)  Plaintiff believes the instigating complaint was

5   submitted by Ciuca, the Google Play Team, or a Doe Defendant in retaliation for the trademark

6   infringement complaints filed by Plaintiff.  (SAC ¶ 93.)

7        Plaintiff appealed the termination of its developer account, which was denied without

8   explanation.  (SAC ¶¶ 97-98.)  Plaintiff then filed a lawsuit, after which Google clarified that

9   Plaintiff's app itself did not violate the anti-spyware policy, but that the app title was in violation

10  because "[a]pp titles should not be misleading or represent the product as being spyware and/or

11  capable of surreptitious tracking."  (SAC ¶¶ 99, 101-102, Exh. 2.)  When Plaintiff's counsel

12  pointed out that other monitoring apps contained the word "spy" in the title, Google responded that

13  it intended to prohibit all developers from using the word "spy."  (SAC ¶¶ 103-104.)

14       In October 2013, Google reinstated Plaintiff's developer account, but deleted all of the

15  consumer reviews and records for the original "Spy Phone" app.  (SAC ¶ 108.)  Relying on

16  Google's representations, Plaintiff relaunched its app as "Phone Tracker."  (SAC ¶¶ 106-107, 110.)

17  In the first ten months, the "Phone Tracker" app had only 260,000 downloads, resulting in a

18  commensurate loss of advertising revenue.  (SAC ¶¶ 111, 113.)

19       In the meantime, other apps continued using "spy" in their titles, even though Google

20  allegedly implemented human review in January 2015 to ensure compliance with its Developer

21  Program Policies.  (SAC ¶¶ 114-118.)  Thus, starting in January 2014, Plaintiff began submitting

22  complaints about apps using the word "spy" in their title, asserting violations of the anti-spyware

23  policy.  (SAC ¶ 125.)  Google removed some of these apps, but not others, and many of the apps

24  that were removed were re-listed afterwards.  (SAC ¶ 126, 128.)  In July 2014, Plaintiff submitted

25  complaints against a monitoring app allegedly developed by Ciuca.  (SAC ¶¶ 129, 130.)  On July

26  16, 2014, Google informed Plaintiff that it was suspending Plaintiff's developer account and

27  removing Plaintiff's app for violating Google's spam policy.  (SAC ¶ 131.)  Plaintiff believes the

28  removal was based on a complaint submitted by Ciuca, a Google Play Team member, and/or a

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1  Doe Defendant.  (SAC ¶ 137.)  After the removal of its app, Plaintiff filed complaints against

2  other monitoring apps to test whether the anti-spam policy was being applied uniformly, but none

3  of these apps were removed.  (SAC ¶¶ 143, 144.)

4       A month after having its developer account terminated, Plaintiff received a letter from a

5  "Concerned Google Play Member," which "confirmed Plaintiff's belief" that Plaintiff was being

6  singled out for submitting trademark infringement complaints.  (SAC ¶¶ 146, 147, Exh. 4.)

7       Plaintiff filed the instant suit in October 2014.  Plaintiff filed an amended complaint on

8  January 23, 2015, which identified the "SpyPhone 1.0" app as an infringing application; on

9  February 10, 2015, Google removed that app.  (SAC ¶¶ 153-156.)  A week later, Google removed

10  the app "Spy Phone 2" for trademark infringement although Plaintiff had never identified or

11  complained about that app.  (SAC ¶ 157.)  Judge Grewal granted Google's motion to dismiss on

12  March 21, 2016, with leave to amend.  (Dismissal Ord., Dkt. No. 52.)  In the 21-day period

13  between Judge Grewal dismissing Plaintiff's first amended complaint and the filing of the second

14  amended complaint, Google removed at least four apps that infringed on Plaintiff's trademark,

15  without Plaintiff submitting a complaint or otherwise identifying the app.  (SAC ¶¶ 162-163.)

16       On April 11, 2016, Plaintiff filed its second amended complaint, alleging: (1) trademark

17  dilution against Ciuca and the Doe Defendants, (2) contributory trademark infringement against

18  Google, (3) tortious interference with contract, (4) tortious interference with prospective economic

19  advantage, (5) breach of the covenant of good faith and fair dealing against Google, and (6)

20  violations of California's Unfair Competition Law ("UCL"), Cal. Business & Professions Code §

21  17200 et seq.  Google filed a motion to dismiss on May 25, 2016.  Plaintiff filed its opposition on

22  July 15, 2016, and Google filed its reply on August 5, 2016.  (Plf.'s Opp'n, Dkt. No. 62; Def.'s

23  Reply, Dkt. No. 69.)  Plaintiff also filed a motion to supplement on July 15, 2016, seeking to add

24  claims for false advertising under Lanham Act § 43(a) and California's False Advertising Law,

25  Cal. Business & Professions Code § 17500 et seq.  (Plf.'s Mot. at 3.)  Google filed its opposition

26  on July 29, 2016, and Plaintiff filed its reply on August 5, 2016.  (Def.'s Opp'n, Dkt. No. 66; Plf.'s

27  Reply, Dkt. No. 67.)

28

4

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by

United States District Court
Northern District of California

the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### B.    Motion to Supplement

Under Federal Rule of Civil Procedure 15(d), a party may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Rule 15(d) is meant "to promote as complete an adjudication of the dispute between the parties as is possible." *Riley v. Correctional Officers Grieco and Collier*, Case No.: C 13-4410 CW (PR), 2014 WL 129396, at *5 (N.D. Cal. Jan. 14, 2014); *see also Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). Thus, Rule 15(d) "give[s] district courts broad discretion in allowing supplemental pleadings. The rule is a tool of judicial economy and convenience." *Keith*, 858 F.2d at 473. Leave to supplement is generally favored; however, the Court can deny leave to supplement on the grounds of undue delay, prejudice to the opposing party, or futility. *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-865 SI, 2014 WL 1931069, at *1 (N.D. Cal. May 14, 2014).

## III.    DISCUSSION

### A.    Motion to Dismiss

#### i.    Contributory Trademark Infringement

Plaintiff's first cause of action against Google is for contributory trademark infringement. "To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)). When the defendant "supplies a service rather than a product, under the second prong of this test, the court must consider the extent of control exercised by the defendant over the third party's means of infringement." *Id.*

In dismissing the first amended complaint, Judge Grewal applied *Tiffany (NJ) Inc. v. eBay Inc.*, in which the Second Circuit found that "[f]or contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service

*United States District Court*
*Northern District of California*

is being used to sell counterfeit goods.  Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary."  600 F.3d 93, 107 (2d Cir. 2010).  In so concluding, the Second Circuit relied on the Supreme Court's decision in *Inwood*, which found that a defendant is liable "if it 'continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement.'"  *Id.* at 108 (quoting *Inwood*, 456 U.S. at 854)).  As applied in the instant case, Judge Grewal found that Plaintiff had not alleged Google had notice of the specific acts of infringement because:

> When [Plaintiff] did complain about these apps, it intentionally made spyware complaints instead of trademark complaints in order to remain anonymous.  But spyware complaints are not the same as trademark complaints, and Google could not be expected to respond to a complaint about one offense by investigating another.  Absent specific notice of trademark infringement, Google cannot be liable for contributory infringement merely for failing to remove infringing apps preemptively.

(Dismissal Ord. at 7-8.)  Further, to the extent Plaintiff's contributory trademark infringement claim was based on the Reptilicus.net Brutal Spy Phone complaint, in which Google allegedly investigated but did not remove the app, Judge Grewal concluded that Google did not ignore the trademark complaint but investigated and found that it could not assess the merits of the claim. (*Id.* at 8.)  Because the words "Spy Phone" could have been a descriptor, which would have defeated a trademark infringement claim, Google's investigation "undercut[ Plaintiff]'s assertion that Google had actual notice of that infringement."  (*Id.*)

Plaintiff's contributory trademark infringement claim is based on three grounds.  First, Plaintiff challenges "Google's failure to act promptly to suspend its services to known infringers of Plaintiff's mark."  (Plf.'s Opp'n at 6; SAC ¶ 184.)  Specifically, Plaintiff relies on two specific incidents: (1) the 27 days it took Google to remove "Spy Phone App" after Plaintiff filed a trademark complaint on May 17, 2013, and (2) the 18 days it took Google to remove an infringing app identified in Plaintiff's First Amended Complaint on January 23, 2015.[1]  (Plf.'s Opp'n at 8.)

---

[1] While Plaintiff suggests that it has alleged that "Google typically took weeks to respond to Plaintiff's infringement complaints," outside of these two incidents, the Second Amended Complaint does not allege that the resolution of other complaints were delayed.  (*See* Plf.'s Opp'n at 8.)

United States District Court
Northern District of California

1   Google responds that Plaintiff provides no case law that such a response time would constitute

2   contributory trademark infringement.  (Def.'s Reply at 3.)  This claim regarding Google's failure to

3   act promptly was not addressed by Judge Grewal's order.

4         Neither party provides case law for how long allegedly infringing material must remain

5   available before a contributory trademark infringement claim accrues.  Plaintiff cites cases where

6   courts dismissed a contributory trademark infringement claim because the defendant resolved

7   complaints within three days.  *E.g.*, *Tiffany*, 600 F.3d at 99, 106 (finding no contributory

8   infringement where the defendant removed allegedly counterfeit listings within 12 to 24 hours of a

9   complaint being filed); *Academy of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, Case No.

10  CV 10-3738 AB (CWx), 2015 WL 5311085, at *10, 35 (C.D. Cal. Sept. 10, 2015) (finding no

11  contributory infringement where the defendant resolved complaint letters within an average of

12  2.75 days of the date identified).  Conversely, other courts have found sufficient allegations for

13  contributory copyright infringement where the defendant did not remove the infringing material

14  until six to nine months after the infringement notice was sent.  *Oppenheimer v. Allvoices*, No. C

15  14-499 LB, 2014 WL 2604033, at *7 (N.D. Cal. June 10, 2014) (rejecting the defendant's

16  argument that it promptly removed access to the infringing material where there was at least one

17  incident where the removal occurred six months after a complaint was filed); *Tomelleri v. Zazzle,*

18  *Inc.*, Case No. 13-cv-2576-EFM-TJJ, 2015 WL 8375083, at *15 (D. Kan. Dec. 9, 2015) (denying

19  summary judgment on contributory infringement claim where the plaintiff had stated in an

20  affidavit that infringing material remained on the website six to nine months after giving the

21  defendant an infringement notice).

22         In the instant case, Plaintiff cites two incidents in which Google took 18 and 27 days to act

23  on a complaint.  This is a markedly shorter period than cases where the courts found sufficient

24  allegations based on a delay in removing the infringing material.  The Court finds, however, that

25  whether this delay is actionable cannot be decided at the pleading stage.  Although the length of

26  time alone is not sufficient to establish a claim, delay could be actionable if the investigation was

27  unjustifiably and/or purposefully delayed.  This is a factual question that must be determined on

28  summary judgment.

United States District Court
Northern District of California

1        Second, Plaintiff's contributory trademark infringement claim is based on Google's failure

2   to take down the Reptilicus.net Brutal Spy Phone app.  (Plf.'s Opp'n at 9; SAC ¶ 185.)  Compared

3   to the First Amended Complaint, Plaintiff makes one additional allegation, which is that Google

4   had previously taken down apps with similarly infringing names, such as "Gaylum Spy Phone."

5   (*Compare* Dkt. No. 17 ¶¶ 58-59 *with* SAC ¶¶ 84-85.)  In responding to Google's motion to

6   dismiss, however, Plaintiff does not rely on this additional allegation, but instead challenges Judge

7   Grewal's conclusion that Google did not ignore the trademark infringement complaint about the

8   Reptilicus.net app.  (Plf.'s Opp'n at 9-10 (citing Dismissal Ord. at 8).)  In other words, Plaintiff's

9   opposition reads more as an improper motion for reconsideration, which is not permitted under the

10  Local Rules absent Court permission.  *See* Civil Local R. 7-9.

11       Even considering Plaintiff's argument on the merits, the Court finds that Plaintiff has not

12  alleged sufficient facts that Google acted improperly in not removing the Reptilicus.net app.  In

13  finding there was no notice of infringement as to the Reptilicus.net app, Judge Grewal relied on

14  *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949 (C.D. Cal. 1997).  (Dismissal

15  Ord. at 8.)  There, the district court explained:

16              The mere assertion by a trademark owner that a domain name
                infringes its mark is not sufficient to impute knowledge of
17              infringement to [the defendant].  The use of an identical or similar
                mark does not necessarily constitute infringement.  In order to be
18              infringing, such use must be in connection with goods or services
                that are competitive with, or at least related to, the goods or services
19              for which the trademark has been registered or used in commerce.
                [Citation]  The use must also cause a likelihood of confusion as to
20              origin or sponsorship.

21  *Lockheed Martin Corp.*, 985 F. Supp. at 963.  The district court further found that the likelihood of

22  confusion test was key, and that its outcome "cannot be predicted from an examination of the mark

23  and the domain name in connection with a brief statement of the purpose for which the mark is

24  being used."  *Id.*  Thus, "[a] reasonable person in [the defendant's] position could not presume

25  infringement even where the domain name is identical to a mark and registered for use in

26  connection with a similar or identical purpose."  *Id.*  As applied in the instant case, Plaintiff alleges

27  that the Reptilicus.net app uses the "Spy Phone" trademark and that it is a parental monitoring app,

28  but does not allege that Google knew it was a parental monitoring app or make factual allegations

9

United States District Court
Northern District of California

1    regarding the likelihood of confusion factors, *e.g.*, strength of the mark, evidence of actual

2    confusion, and the degree of care used by purchasers.  The Court therefore GRANTS Google's

3    motion to dismiss as to a contributory trademark infringement claim based on Google's failure to

4    remove the Reptilicus.net app.

5              Finally, Plaintiff brings a contributory trademark infringement claim based on the theory

6    that Google was "willfully blind" to the ongoing infringement.  (Plf.'s Opp'n at 10.)[2]  In *Tiffany*,

7    the Second Circuit acknowledged that a defendant could be found to "know or has reason to

8    know" of trademark infringement where a defendant "had reason to suspect that counterfeit . . .

9    goods were being sold through its website, and intentionally shielded itself from discovering the

10   offending listings or the identity of the sellers behind them . . . ."  600 F.3d at 109.  Thus, "[a]

11   service provider is not . . . permitted willful blindness.  When it has reason to suspect that users of

12   its service are infringing a protected mark, it may not shield itself from learning of the particular

13   infringing transactions by looking the other way." *Id.*  A general knowledge that counterfeit goods

14   were being listed and sold through its site was not, without more, sufficient to trigger liability. *Id.*

15   at 110.  Similarly, in *Lockheed Martin*, the district court found that receipt of both the domain

16   name registration and a statement of purpose for the domain name registration was insufficient "to

17   impute knowledge of future infringing uses to [the defendant]."  985 F. Supp. at 963.  By contrast,

18   in *Spy Optic, Inc. v. Alibaba.Com, Inc.*, the district court declined to dismiss a contributory

19   infringement claim where the plaintiff had alleged that on at least one occasion, the defendant had

20   allowed a known infringer to continue using its website to post infringing products, even after the

21   plaintiff alerted the defendant that the seller was infringing.  163 F. Supp. 3d 755, 766 (C.D. Cal.

22   2015).  The district court reasoned that "[t]aken as true, this fact establishes that Defendant

23   continued to supply its services to an entity it knew was engaging in trademark infringement." *Id.*

24             In the instant case, Plaintiff is essentially alleging that Google had a duty to preemptively

25   remove apps that infringed on Plaintiff's trademark, on the basis that it has alleged that the Google

26

27   [2] Google does not respond to this argument, except to contend that it is an improper motion for
     reconsideration.  (Def.'s Reply at 2-4.)  Judge Grewal's order did not discuss the "willfully blind"

28   contention, except to note that Plaintiff's allegation that Google knew of particular infringing apps
     was a conclusory statement.  (Dismissal Ord. at 7 n.55.)

United States District Court
Northern District of California

1   Play Team is a small group who was put on notice that Plaintiff possessed the "Spy Phone"

2   trademark.  (Plf.'s Opp'n at 11.)  Plaintiff further alleges that Google had engaged in human review

3   to ensure compliance with the Google Play's Developer Program Policies, which meant that

4   "Google knew the names of all infringing apps before they were listed on Google Play."  (*Id.*)

5   These facts, however, are similar to those rejected by *Lockheed Martin*, where the defendant had

6   both the domain name registration and a statement of purpose, and *Tiffany*, where the defendant

7   was on notice generally of counterfeit goods being sold on its website.  As the Second Circuit

8   concluded, however, such generalized knowledge is insufficient to impute knowledge on Google

9   without something more.  At the hearing, Plaintiff argues Google is like a flea market operator

10  who has been put on notice that a particular vendor is selling counterfeit goods, but continues to

11  allow that vendor to sell counterfeit goods.  Not so.  Plaintiff seeks to require the flea market

12  operator not to just police specific vendors who it has been put on notice of selling counterfeit

13  goods, but to also preemptively check over the goods of every vendor to ensure they are not also

14  selling counterfeit goods.  This is the type of generalized notice that *Tiffany* rejected.

15       The Court finds, however, that Plaintiff does at this stage allege a claim as to apps from

16  developers that Plaintiff had previously reported to have infringed on its trademark, such as

17  Defendant Ciuca.  Like *Spy Optic*, Google would have more specific notice that such a developer

18  had previously infringed on the trademark, yet continued to allow that same developer to release

19  an app that again infringed on the trademark.  *Compare with* 163 F. Supp. 3d at 766.

20       The Court therefore concludes that Plaintiff has sufficiently alleged a contributory

21  trademark infringement claim, and DENIES Google's motion to dismiss.

22            **ii.   State Claims**

23                 a.   Communications Decency Act ("CDA")

24       Google contends that each of Plaintiff's state law claims are barred by the Communications

25  Decency Act ("CDA"), 47 U.S.C. § 230.  Section 230(c)(1) states: "No provider or user of an

26  interactive computer service shall be treated as the publisher or speaker of any information

27  provided by another information content provider."  Similarly, § 230(c)(2)(A) exempts from

28  liability a provider of an interactive computer service for "any action voluntarily taken in good

1    faith to restrict access to or availability of material that the provider or user considers to be

2    obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable,

3    whether or not such material is constitutionally protected."

4         As an initial matter, the Court finds that the CDA defense can be determined on a motion

5    to dismiss in this case.  In general, "[t]he assertion of an affirmative defense may be considered

6    properly on a motion to dismiss where the allegations in the complaint suffice to establish the

7    defense."  *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotation omitted).

8    Applying this principle, several courts in this district have considered the merits of a CDA defense

9    at the motion to dismiss stage.  *E.g.*, *Holomaxx Techs. v. Yahoo!, Inc.*, No. CV-10-4926-JF, 2011

10   WL 865794, at *4 (N.D. Cal. Mar. 11, 2011); *Evans v. Hewlett Packard Co.*, No. C 13-2477

11   WHA, 2013 WL 5594717, at *3 (N.D. Cal. Oct. 10, 2013).  Plaintiff does not suggest that there

12   are insufficient allegations in the complaint to determine whether the CDA defense applies in this

13   case.  (*See* Plf.'s Opp'n at 20.)  The Court therefore will consider whether the CDA defense

14   applies.

15        First, Plaintiff argues that Google is not entitled to CDA immunity because it is not an

16   interactive computer service, but an information content provider.  As defined by § 230(f), an

17   "'interactive computer service' means any information service, system, or access software provider

18   that provides or enables computer access by multiple users to a computer server," while an

19   "'information content provider' means any person or entity that is responsible, in whole or in part,

20   for the creation or development of information provided through the internet or any other

21   interactive computer service."   Plaintiff argues that because Google creates content, specifically

22   the source code that enables apps to access and interact with the Android operating system,

23   Google is an information content provider that falls outside of the purview of § 230(c).  (Plf.'s

24   Opp'n at 20-21.)  In support, Plaintiff relies on *Opperman v. Path, Inc.*, where the district court

25   found that Apple was an information content provider because it controlled the development of the

26   apps that were being challenged.  84 F. Supp. 3d 962, 987 (N.D. Cal. 2015).

27        *Opperman*, however, is distinguishable.  To be responsible for the creation or development

28   of the offending information, "'[d]evelopment refers 'not merely to augmenting the content

United States District Court
Northern District of California

generally, but to *materially contributing* to its alleged unlawfulness.'" *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1043 (N.D. Cal. 2014) (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008)) (emphasis added). Thus, providing neutral tools does not constitute "development." *Id.* As applied to Apple, the plaintiffs had alleged that Apple's "iOS Human Interface Guidelines," which set guidelines for developers creating apps for the App Store, included "several suggestions that do, on their face, appear to encourage the practices Plaintiffs complain of in this case." *Id.* at 1044. In short, Apple did more than provide a "neutral tool" to develop the complained of practice, but actually "taught Program registrants' to incorporate forbidden data harvesting functionalities—even for private 'contacts'— into their Apps and encouraged Program registrants to design those functions to operate in non-discernible manners that would not be noticed by the iDevice owner." *Id.*; *see also Opperman*, 84 F. Supp. 3d at 987 ("Plaintiffs have also provided factual detail regarding how Apple controlled the development of Apps provided by its App Store, and contributed to the creation of the offensive content, for example, by using its iOS Human Interface Guidelines to instruct App developers to access address book data without prior permission").

In contrast, here Plaintiff alleges in its opposition that Google provided source code to developers to allow apps to access the Android operating system. This source code does not "materially contribute" to the actions complained of in this suit, namely that those app titles are infringing on Plaintiff's trade mark. Thus, the Court concludes that Google was acting as an interactive computer service, not an information content provider.

Second, Plaintiff argues that Google cannot establish good faith at the motion to dismiss stage. (Plf.'s Opp'n at 22.) Google responds that Plaintiff's allegations that Google's policies were only enforced against Spy Phone and not other apps is not sufficient because selective enforcement is not actionable. (Def.'s Mot. at 15; Def.'s Reply at 7-8.) The Court finds that Plaintiff has sufficiently alleged that Google's actions are not in good faith. Contrary to Google's contentions, Plaintiff is not alleging that Google was selectively enforcing its spyware policy; instead, Plaintiff alleges that Google's claim that Plaintiff's app violated the spyware policy was entirely pretextual because "Google has no actual policy against using the word 'spy' in the name

1    of an app." (Plf.'s Opp'n at 22; *see also* SAC ¶¶ 124, 151.)  In short, Google was not selectively

2    enforcing its policy because no such policy existed to begin with.  The cases cited by Google are

3    inapposite; for example, in *e360insight, LLC v. Comcast Corp.*, there was no question that

4    Comcast was enforcing an anti-spam policy against the plaintiff, and that the plaintiff's primary

5    contention was that Comcast was "singling out Plaintiff when others behaving in a like manner are

6    not treated in a like fashion."  546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (internal quotation

7    omitted).  Likewise, in *Holomaxx Techs v. Microsoft Corp.*, "it [wa]s clear from the allegations of

8    the complaint itself that Microsoft reasonably could conclude that Holomaxx's e-mails were

9    'harassing' and thus 'otherwise objectionable,'" thus supporting the Court's finding that the

10   defendant could block the plaintiff's e-mails even if it did not block other similar e-mails.  783 F.

11   Supp. 2d 1097, 1104 (N.D. Cal. 2011).  Thus, the Court concludes that Google has not sufficiently

12   established good faith at this juncture, and that § 230(c)(2)(A) immunity cannot be determined at

13   the pleading stage.  This does not preclude Google from raising § 230(c)(2)(A) immunity at a later

14   stage, such as summary judgment.

15           Section 230(c)(1) immunity, however, by its plain terms does not require good faith, and

16   Plaintiff does not suggest otherwise.  At the hearing, Plaintiff clarified that its state law claims

17   were limited solely to Google's decision to suspend its app for violating the alleged anti-spyware

18   policy and requiring Plaintiff to rename its app.  Thus, § 230(c)(1) immunity is not applicable in

19   this case.

20                         b.  Tortious Interference with Contract

21           Plaintiff's third cause of action is for tortious interference with contract.  To allege a claim

22   for tortious interference, Plaintiff must allege: "(1) a valid contract between plaintiff and a third

23   party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to

24   induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the

25   contractual relationship; and (5) resulting damage."  *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th

26   1594, 1603 (2009).

27           Plaintiff's claim is based on its contract with Google through the AdSense program.  (SAC

28   ¶ 193.)  Google contends that Plaintiff's claim as to Google fails because Google cannot interfere

United States District Court
Northern District of California

14

1   with its own contract.  (Def.'s Mot. at 6.)  Plaintiff responds that Google is not interfering with its

2   own contract because the contract is with Google's AdSense division, whereas Plaintiff is

3   challenging the actions of the Google Play Team.  (Plf.'s Opp'n at 13.)

4        Plaintiff cites no case suggesting that a company can be held liable for tortious interference

5   with its own contract simply because the actions are committed by a separate department.  Further,

6   Plaintiff's lawsuit is not against the Google Play Team but Google itself, challenging "[t]he acts of

7   Google" to the extent it affected Plaintiff's "contract with Google."  (SAC ¶¶ 193, 197.)  Plaintiff's

8   tortious interference with contract cause of action is dismissed with prejudice.

9             c.   Good Faith and Fair Dealing[3]

10       Plaintiff's fifth cause of action is for breach of contract and the covenant of good faith and

11  fair dealing.  Plaintiff alleges that Google breached the covenant when it removed Plaintiff's app

12  from Google Play in bad faith and without justification "by abusing the discretion afforded to

13  Google with respect to app takedowns under § 7.2 of the [Developer Distribution Agreement

14  ("DDA")]," including its determination that the Spy Phone trademark violated Google's policies.

15  (SAC ¶ 215.)  Google argues that this cause of action must be dismissed because the DDA gives

16  Google "broad discretionary power to police its own website," and therefore the covenant of good

17  faith and fair dealing cannot be used to contradict its discretionary power.  (Def.'s Mot. at 7.)

18       "Every contract imposes upon each party a duty of good faith and fair dealing in its

19  performance and its enforcement."  *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.

20  4th 342, 371 (1992) (internal quotations omitted).  "The covenant of good faith finds particular

21  application where one party is invested with a discretionary power affecting the rights of another.

22  Such power must be exercised in good faith."  *Id.* at 372.  At the same time, however, the covenant

23  of good faith cannot "be read to prohibit a party from doing that which is expressly permitted by

24  an agreement. . . . [A]s a general matter, implied terms should never be read to vary express

25

26  _____

[3] The Court has reservations as to whether Plaintiff was permitted by Judge Grewal to add two
27  new claims—tortious interference with contract and breach of the covenant of good faith and fair
    dealing—in their Second Amended Complaint.  Google, however, does not raise the point, arguing
28  instead that these claims fail on the merits and because they are barred by § 230.  (Def.'s Mot. at 2-
    3, 6-7; Def.'s Reply at 1.)  Google has therefore waived this argument.

terms." *Id.* at 374. Thus, "[t]he general rule regarding the covenant of good faith is plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing." *Id.* (internal quotation and modifications omitted).

Here, Google relies on DDA § 7.2, which states:

> **Google Takedowns**. While Google does not undertake an obligation to monitor the Products or their content, if Google is notified by you or otherwise becomes aware and determines in its sole discretion that a Product or any portion thereof or your Brand Features; (a) violates the intellectual property rights or any other rights of any third party; (b) violates any applicable law or is subject to an injunction; (c) is pornographic, obscene or otherwise violates Google's hosting policies or other terms of service as may be updated by Google from time to time in its sole discretion; (d) is being distributed by you improperly; (e) may create liability for Google or Authorized Carriers; (f) is deemed by Google to have a virus or is deemed to be malware, spyware or have an adverse impact on Google's or an Authorized Carrier's network; (g) violates the terms of this Agreement or the Developer Program Policies for Developers; or (h) the display of the Product is impacting the integrity of Google servers (i.e., users are unable to access such content or otherwise experience difficulty), Google may remove the Product from the Market or reclassify the Product at its sole discretion. Google reserves the right to suspend and/or bar any Developer from the Market at its sole discretion.

Thus, Google contends that by the express terms of the contract, it has the right to remove apps that violate its anti-spyware policies or the rights of another, and that this right cannot be contradicted by the implied covenant of good faith and fair dealing. (Def.'s Mot. at 7.)

Plaintiff is not, however, disputing that Google has this right. Rather, Plaintiff's claim is premised on Google's failure to exercise this right in good faith because, according to Plaintiff, Google did not, in fact, have an anti-spyware policy that prohibited the use of the word 'Spy' in an app title. (Plf.'s Opp'n at 14-15 (explaining why Google's removal of Plaintiff's app was illegitimate).) In other words, while Google may have informed Plaintiff that it removed the Spy Phone app because of the anti-spyware policy, Plaintiff is alleging that this reason was pretextual because Google had not found the app was in violation of the anti-spyware policy (as no such policy exists), and that therefore Google was not removing Plaintiff's app in accordance with the DDA's express grant of discretion. Plaintiff does not seek to prevent Google from exercising its

16

discretion entirely, but instead seeks to require Google to exercise that discretion in good faith. Thus, applying the implied covenant does not create an obligation inconsistent with the express terms of the agreement, as Google argues, because Google still maintains the right to remove apps that violate its policy at its sole discretion.  The Court therefore DENIES the motion to dismiss the implied covenant of good faith and fair dealing claim, to the extent it is based on Google's decision to suspend Plaintiff's app for violating the alleged anti-spyware policy and require Plaintiff to rename its app.

### d.  Tortious Interference with Prospective Economic Advantage

Plaintiff's fourth cause of action is for tortious interference with prospective economic advantage.  The elements of this tort are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).  Further, the defendant's act must be "wrongful by some legal measure other than the fact of interference itself."  *Id.* at 1153 (internal quotation omitted).

First, Google argues that Plaintiff's tortious interference with prospective economic advantage claim fails because there is no act that is independently wrongful aside from the interference itself.  (Def.'s Mot. at 8-10.)  Plaintiff responds that this claim is based on the covenant of good faith and fair dealing.  (Plf.'s Opp'n at 17.)  As discussed above, the Court finds that the covenant of good faith and fair dealing claim is adequately pled, as Plaintiff has alleged that Google did not actually find that its app violated any anti-spyware policy and therefore Google did not have discretion to remove the app under the DDA.

Second, Google contends that Plaintiff cannot recover any damages because the DDA precludes recovery for consequential and lost profits damages.  (Def.'s Mot. at 10.)  Section 12 states:

12.1 You expressly understand and agree that Google, its

17

> subsidiaries and affiliates, and its licensors shall not be liable to you
> under any theory of liability for any direct, indirect, incidental,
> special consequential or exemplary damages that may be incurred by
> you, including any loss of data, whether or not Google or its
> representatives have been advised of or should have been aware of
> the possibility of any such losses arising.

Plaintiff in turn argues that this section is unconscionable or should be interpreted as applying only to good faith acts.  (Plf.'s Opp'n at 18-19.)

In California, an agreement is unconscionable when there is both procedural and substantive unconscionability.  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  Procedural unconscionability concerns oppression or surprise due to unequal bargaining power, while substantive unconscionability concerns overly harsh or one-sided results.  *Id.*  Plaintiff points to various allegations showing that it had unequal bargaining power because Google Play was the only viable marketplace for Plaintiff to reach Android users, but this showing of unequal bargaining power goes only to procedural unconscionability.  (*See* SAC ¶¶ 16, 21, 104, 105.)  Plaintiff does not, however, explain why the limitation on liability provision is substantively unconscionable, and therefore has failed to show that the provision is unconscionable.  Notably, the district court in *Darnaa, LLC v. Google, Inc.* concluded that a limitation of liability provision was not substantively unconscionable, explaining that such provisions "have long been recognized valid in California" and "are particularly appropriate where, as here, one party is offering a service for free."  Case No. 15-cv-3221-RMW, 2015 WL 7753406, at *5 (N.D. Cal. Dec. 2, 2015) (internal quotation omitted); *see also id.* at *3 (finding that a limitation of liability clause was not substantively unconscionable, since "[b]ecause YouTube offers its hosting services at no charge, it is reasonable for YouTube to retain broad discretion over those services and to minimize its exposure to monetary damages.  Plaintiff has not pointed to any shocking unfairness in these provision of the Terms of Service").

Although the district court in *Darnaa LLC* found that the limitation of liability provision was not unconscionable, it did conclude that the liability provision could not be applied to intentional wrongs, such as causes of action for breach of the implied covenant of good faith and fair dealing and intentional tortious interference with prospective economic damages.  *Id.* at *5. This was because "in California, 'contractual releases of future liability for fraud and other

18

intentional wrongs are invariably invalidated.'"  *Id.* (quoting *Farnham v. Superior Court (Sequoia Holding, Inc.)*, 60 Cal. App. 4th 69, 71 (1997)); *see also McQuirk v. Donnelley*, 189 F.3d 793, 796-97 (9th Cir. 1999) ("*Farnham* thus stands for the proposition that § 1668 [Contracts contrary to policy of law] invalidates the total release of future liability for intentional wrongs").  Here, Google seeks to apply its limitation of liability provision to Plaintiff's tortious interference with prospective economic advantage claim.  Because California prohibits such application of a limitation of liability provision, the Court will not dismiss on this ground.  The Court DENIES Google's motion to dismiss this cause of action.

### e.  Unfair Competition Law ("UCL")

Plaintiff's final cause of action is for violation of California's Unfair Competition Law ("UCL").  Defendant's only argument for dismissal of this claim is that Plaintiff's other causes of actions fail.  Because the Court is permitting Plaintiff's contributory trademark infringement claim and good faith and fair dealing claim to move forward, Plaintiff has alleged independent unlawful acts on which to support their UCL claim.  The Court DENIES Defendant's motion to dismiss the UCL claim.

### B.    Motion to Supplement

Plaintiff moves to supplement its complaint with a new claim for false advertising under the Lanham Act and California's False Advertising Law ("FAL").  Plaintiff's claim is that when Google AdWords sells the keywords "Spy Phone" to other developers, Google is engaging in false advertising because Google had previously told Plaintiff that the term "spy" is misleading as it deceives people into thinking that such apps are spyware and/or capable of surreptitiously monitoring data.  (Plf.'s Mot. at 4.)  Google opposes on the grounds that the proposed amendment is untimely and futile.

First, regarding timeliness, Google contends that there are no new facts that Plaintiff seeks to add because the AdWords program has allowed bidding on trademarks as keywords for more than a decade.  (Def.'s Opp'n at 3.)  Plaintiff does not challenge the sale of the keyword "Spy Phone" through AdWords generally, but as sponsored ads on Google Play, which Plaintiff contends is a development that occurred around May 2016, after the filing of the SAC.  (Plf.'s

1   Reply at 2; *see also* Proposed Third Amended Compl. ¶¶182-183, Proposed TAC, Dkt. No. 64-1.)[4]

2   The Court therefore finds that Plaintiff's claim is based on events that occurred after the filing of

3   the Second Amended Complaint.

4          Second, Google argues that amendment is futile.  Google's argument, however, is based on

5   a fundamental misunderstanding of Plaintiff's proposed claim.  Google focuses exclusively on

6   whether the use of a trademark as a keyword gives rise to false advertising liability, a claim that

7   Plaintiff is not pursuing.  (Def.'s Opp'n at 5-8.)  To be clear, Plaintiff does not allege that Google is

8   engaging in false advertising by allowing other developers to buy the "Spy Phone" keyword and

9   thus mislead people into thinking that such apps were created by the trademark holder, Spy Phone.

10  Instead:

> The gist of this claim is that Google, by selling the keywords "Spy
> Phone" to developers of parental monitoring apps and giving the
> purchaser of such keywords priority placement for its competitive
> app in Google Play, puts Plaintiff at a competitive disadvantage not
> by creating confusion between Plaintiff's App and a competitor's
> app, but by falsely suggesting that the competing app associated
> with the keywords "Spy Phone" is "capable of surreptitious
> tracking."

16  (Plf.'s Reply at 5.)  In short, Plaintiff is attempting to use Google's alleged anti-spyware policy

17  against Google by arguing that since Google itself stated that the term "spy" is misleading, Google

18  is itself engaging in false advertising by selling a keyword with the word "spy" in it to other

19  developers of tracking apps.[5]  (Proposed TAC ¶¶ 187, 218.)

20         Although Google ultimately misapprehends Plaintiff's proposed claim, the Court finds that

21  Plaintiff's proposed claim is futile.  In order to bring a false advertising claim under the Lanham

22  Act, Plaintiff must allege: (1) a false statement of fact by the defendant, (2) the statement actually

23  deceived or has the tendency to deceive a substantial segment of its audience, (3) the deception is

24  material, *i.e.* likely to influence a purchasing decision, (4) the defendant caused the false statement

25  _____

26  [4] Google objects to Plaintiff's exhibits, mostly on the ground that many of the exhibits should have
been provided in the opening brief.  (Dkt. No. 70.)  Because the Court does not consider the
27  exhibits and will deny Plaintiff's motion on other grounds, it overrules Google's objections.
[5] Google's opposition focuses primarily on whether the use of a trademark as a keyword gives rise
28  to false advertising liability, a claim that Plaintiff is not pursuing.  (Def.'s Opp'n at 5-8; Plf.'s
Reply at 5.)

United States District Court
Northern District of California

to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result of the false statement. *Skydrive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). Regarding the first element, Plaintiff's claim is too clever by half as it relies on Google's own statement that use of the word "spy" is misleading, and therefore constitutes false advertising. (Proposed TAC ¶ 187.)  The vast majority of Plaintiff's complaint, however, is premised on allegations that Google did not actually believe the word "spy" was misleading and that "Google had no real justification to prevent Plaintiff f[ro]m using Plaintiff's mark to identify Plaintiff's App."  (Proposed TAC ¶ 135; *see also* Proposed TAC ¶¶ 158 ("The author of the letter confirmed Plaintiff's belief that 'there was no real justification' for the adverse actions taken against Plaintiff in 2013 and 2014"), 162 ("the Google Play Team had had no justification for taking down Plaintiff's App for violating Google Play's Developer Program Policies and that Google acted in bad faith and abused its discretion under the DDA in taking down Plaintiff's App"), Exh. 4 ("They just made up the excuse that you were using the spyphone name as they needed a cover for thier [sic] actions.  There is no formal policy aginst [sic] using spyphone except against your company").)  Plaintiff's state claims, as further explained in their opposition to Google's motion to dismiss, are also premised on the allegation that Google had no policy against using the word "spy" and that any explanation otherwise was simply pretext.  (*See* Plf.'s Opp'n at 22 ("The SAC further alleges that Google has no actual policy against using the word 'spy' in the name of an app, and that Plaintiff was the only developer that Google had ever prevented from using the word 'spy' in the name of its app").)  In short, by relying on Google's statement that the word "spy" is misleading by falsely suggesting that apps with "spy" in their title are capable of surreptitious tracking, while at the same time challenging Google's anti-spyware policy as non-existent and pretextual, Plaintiff cannot allege a false statement of fact.

Further, Plaintiff has provided no factual allegations regarding the other elements.  For example, with respect to materiality, Plaintiff merely alleges that "Google's false suggestion that the monitoring app promoted or advertised by the keywords 'Spy Phone' can be used as spyware and/or is capable of surreptitiously monitoring of data [sic] is material and likely to influence a consumer's decision as to which monitoring app to download."  (Proposed TAC ¶ 43.)  This is a

United States District Court
Northern District of California

conclusory allegation that lacks any facts, particularly when the remainder of Plaintiff's complaint contends that Google had no justification to prevent Plaintiff from using the name "Spy Phone" to begin with.  (Proposed TAC ¶¶ 135, 158, 162.)  Likewise, to the extent Plaintiff alleges injury resulting from the alleged false advertising, Plaintiff has alleged no facts that customers are downloading competitor's apps instead of Plaintiff's app because of the false statement that such apps were spyware and/or capable of surreptitiously monitoring data.  In fact, the only ad listed above Plaintiff's app when using the "Spy Phone" keyword search is an app that is clearly labeled as the "Best Parental Control App," the same function as Plaintiff's app.  (Proposed TAC, Exh. 8.) In short, there is no factual allegation suggesting that anyone, including Plaintiff, believed that using the term "spy phone" meant that an app was spyware and/or capable of surreptitious monitoring, and deliberately downloaded an app believing that the app was spyware and/or capable of surreptitious monitoring.

The Court therefore finds that Plaintiff's proposed Lanham Act false advertising claim is futile.  As for Plaintiff's FAL claim, "claims of unfair competition and false advertising under state statutory and common law are 'substantially congruent' to claims made under the Lanham Act." *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) (quoting *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994).  Plaintiff's FAL claim therefore fails for the same reasons that the Lanham Act false advertising claim fails.

### IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Google's motion to dismiss.  The Court DENIES Plaintiff's motion to supplement the complaint.

IT IS SO ORDERED.

Dated: October 14, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge